## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors.<br>――――――――――――――<br>LYNN TILTON; *et al.*,<br><br>　　　　　　　Appellants,<br><br>　　　　　v.<br><br>MBIA INC., *et al.*,<br><br>　　　　　　　Appellees. | Chapter 11<br><br>Bankruptcy Case No. 18-10512 (KBO)<br><br>Jointly Administered<br><br><br><br><br>Case No. 1:22-cv-00400 (TLA) |

### ANSWERING BRIEF OF APPELLEE
### ALVAREZ & MARSAL ZOHAR MANAGEMENT LLC

**MORRIS NICHOLS ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Tori L. Remington (No. 6901)
1201 North Market Street, 16th Floor
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
rdehney@morrisnichols.com
mharvey@morrisnichols.com
tremington@morrisnichols.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jonathan E. Pickhardt, Esq.
Deborah Newman, Esq.
Blair Adams, Esq.
Zachary Russell, Esq.
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
jonpickhardt@quinnemanuel.com
deborahnewman@quinnemanuel.com
blairadams@quinnemanuel.com
zacharyrussell@quinnemanuel.com

---

[1]　　　　The Debtors, and, where applicable, the last four digits of each of their respective taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellee Alvarez & Marsal Zohar Management LLC ("AMZM"), by and through its undersigned counsel, states as follows:

1.      AMZM is a limited liability company organized and existing under the laws of the state of Delaware.

2.      AMZM is a wholly-owned subsidiary of Alvarez & Marsal Asset Management Services, LLC, which is a wholly-owned subsidiary of Alvarez & Marsal Holdings, LLC.

3.      Alvarez & Marsal Holdings, LLC and Alvarez & Marsal, Inc. are the members of Alvarez & Marsal Asset Management Services, LLC.

4.      The following non-public corporation owns, either directly or indirectly, 10% or more of the equity interests in Alvarez & Marsal Holdings, LLC: Alvarez & Marsal, Inc.

5.      No public or non-public corporation owns, directly or indirectly, 10% or more of the equity interests in Alvarez & Marsal, Inc.


*[Remainder of page intentionally left blank]*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

LIMITED STATEMENT OF THE CASE ..............................................4

I.      AMZM REPLACES APPELLANTS AS COLLATERAL
        MANAGER FOR THE ZOHAR FUNDS ......................................4

II.     AMZM BRINGS MERITORIOUS LITIGATION AGAINST
        APPELLANTS .................................................................................5

        A.      The Books and Records Action .............................................5

        B.      The Delaware 225 Action ......................................................6

        C.      The SDNY Action ..................................................................8

III.    APPELLANTS FILE AN EQUITABLE SUBORDINATION CLAIM
        AGAINST AMZM BASED PRIMARILY ON THE ZOHAR
        LITIGATION .................................................................................11

IV.     THE BANKRUPTCY COURT DISMISSES APPELLANTS'
        CLAIMS WITH PREJUDICE.......................................................12

V.      APPELLANTS APPEAL PORTIONS OF THE BANKRUPTCY
        COURT'S DISMISSAL ORDER ..................................................15

ARGUMENT .........................................................................................16

I.      THE BANKRUPTCY COURT CORRECTLY HELD THAT
        COLLATERAL ESTOPPEL BARS APPELLANTS' "LITIGATION
        CAMPAIGN" THEORY OF EQUITABLE SUBORDINATION ...............16

II.     THE BANKRUPTCY COURT'S DECISION REQUIRES
        DISMISSAL OF THE CLAIM AGAINST AMZM IRRESPECTIVE
        OF THE OUTCOME OF THIS APPEAL ....................................24

CONCLUSION ......................................................................................27

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*In re 9281 Shore Road Corp.*,
  214 B.R. 676 (Bankr. E.D.N.Y. 1997) ........................................................ 21, 22

*In re Astroline Commc'ns Co.*,
  226 B.R. 324 (Bankr. D. Conn. 1998) .................................................. 2, 20, 21

*Citicorp Venture Capital. Ltd. v. Comm. Of Unsecured Creditors Holding
  Unsecured Claims*,
  323 F.3d 228 (3d Cir. 2003) ...................................................................23

*In re Docteroff*,
  133 F.3d 210 (3d Cir. 1997) ............................................... 2, 16, 19, 20

*Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*,
  57 F.3d 1215 (3d Cir. 1995) ...................................................................24

*United States v. Hoffecker*,
  530 F.3d 137 (3d Cir. 2008) ...................................................................21

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3d Cir. 2006) ...................................................................16

*Kool, Mann, Coffee & Co. v. Coffey*,
  300 F.3d 340 (3d Cir. 2002) .............................................................. 13, 21

*Nagle v. Alspach*,
  8 F.3d 141 (3d Cir. 1993) ......................................................................13

*O'Halloran v. Prudential Sav. Bank (In re Island View Crossing II, L.P.)*,
  604 B.R. 181 (E.D. Penn. 2019) ...............................................................23

*Patriarch Partners, LLC v. Zohar CDO 2003-1, LLC*,
  165 A.3d 288 (Del. 2017) .........................................................................6

*Schubert v. Lucent Tech., Inc. (In re Winstar Commc'ns. Inc.)*,
  554 F.3d 382 (3d Cir. 2009) ...................................................................23

*United States v. Shakir*,
  616 F.3d 315 (3d Cir. 2010) ...................................................................24

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
   620 B.R. 456 (S.D.N.Y. 2020) ............................................................... 13, 14, 18

*Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*,
   C.A. No. 12247-VCS, 2016 WL 6248461 (Del. Ch. Oct. 26, 2016) ...............4, 5

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
   No. 1:17-cv-00307-PKC-RWL, [D.I. 88] (S.D.N.Y. Nov. 27, 2017)..............5, 8

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
   286 F. Supp. 3d 634 (S.D.N.Y. 2017) ..................................................................9

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
   2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) *amended*, 2021 WL
   4710787 (S.D.N.Y. Oct. 7, 2021).......................................................................10

*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*,
   C.A. No. 12946-VCS, 2017 WL 5956877 (Del. Ch. Nov. 30, 2017) ..............4, 7

*In re Zohar III, Corp.*,
   2019 WL 6910285 (D. Del. Dec. 19, 2019) .........................................................7

## Statutory Authorities

18 U.S.C. § 1961 ......................................................................................................8

18 U.S.C. § 1964(c) ..................................................................................................9

## PRELIMINARY STATEMENT[2]

1.      The Bankruptcy Court's dismissal of the equitable subordination claim filed by Lynn Tilton and her affiliated entities ("Appellants") against Alvarez & Marsal Zohar Management LLC ("AMZM") should be affirmed.   The sole remaining bases for the claim are Appellants' assertions that three litigations commenced by AMZM on behalf of the Debtors (collectively the "Zohar Litigation")—two of which were decided in AMZM's favor, and one of which was expressly determined not to be "immaterial, insubstantial, or frivolous"—constitute "sham" litigation designed solely "to bleed [Ms. Tilton] dry, wrest control of the Portfolio Companies from [Appellants], and seize valuable Portfolio Company equity," rather than "to vindicate the Zohar Funds' and Portfolio Companies best interests."  These exact same allegations formed the basis for Appellants' breach of contract claim against AMZM in the District Court for the Southern District of New York (the "District Court"), where the court found that Appellants failed to plausibly allege that the litigations were "frivolous or a 'sham,'" and that the litigations were commenced for the legitimate purposes of determining the "ownership of the Portfolio Company equity and attempting to remove Tilton from her positions at the

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them below or in the *Opening Brief of Appellants* [D.I. 30] ("Appellants' Brief"), as applicable.

Portfolio Companies." A153-54 (SDNY Decision at 36-37).[3] The Bankruptcy Court correctly held that the District Court's ruling—which addressed allegations identical to those at issue before the Bankruptcy Court—collaterally estopped Appellants from relitigating their "sham" litigation, "steal the equity" allegations, and necessitated dismissal of Appellants' claim against AMZM.

2.    Appellants now appeal the Bankruptcy Court's *Memorandum Opinion and Order on Defendants Motions to Dismiss the Amended Complaint of Lynn Tilton and The Patriarch & Octaluna Entities for Equitable Subordination* (the "Order"), arguing that collateral estoppel does not apply because (i) the District Court was deciding a breach of contract claim and the Bankruptcy Court was deciding a claim for equitable subordination, and (ii) the District Court "did not address, much less determine, the Amended Complaint's allegations that AMZM's purposes in pursuing its litigation campaign against Patriarch were illegitimate" and "solely designed to harass and harm Plaintiffs." Each of these arguments fails.

3.    First, as made clear by the Third Circuit's decision in *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) and the primary case cited by Appellants, *In re Astroline*, 226 B.R. 324 (Bankr. D. Conn. 1998), collateral estoppel precludes a party from relitigating the same factual issues, regardless of whether the remedy sought or

---

[3]    Citations to the form "A___" are to the *Joint Appendix of Documents Referenced in Defendants-Appellees' Answering Briefs* filed concurrently herewith.

underlying legal theory in the two actions is the same.  Second, Appellants' assertion that the District Court did not address Appellants' allegations regarding AMZM's motivation is simply wrong, as the District Court expressly found that AMZM commenced the Zohar Fund litigation against Appellants to determine the "ownership of the Portfolio Company equity and attempt[] to remove Tilton from her positions at the Portfolio Companies." A153-54 (SDNY Decision at 36-37).  The Bankruptcy Court also made its own, independent determination that the District Court's decision that the litigations were not "frivolous or a 'sham'" necessitated dismissal of Appellants' claim, ruling that "as a general matter, the pursuit of one's legal rights, including the exercise of contractual rights, may not be grounds for equitable subordination."  (A113 (Order at 36)).  Each case cited by Appellants for the contrary position is inapposite, and was addressed and distinguished by the Bankruptcy Court as such.  Thus, there is no basis for reversal of the Bankruptcy Court's collateral estoppel decision, which should be affirmed in all respects.

4.      Moreover, the Bankruptcy Court's decision necessitates dismissal of Appellants' claim against AMZM irrespective of the outcome of this appeal.  The Bankruptcy Court issued several additional holdings that Appellants did not appeal, which provide an alternative and independent basis for dismissal.  Specifically, the Bankruptcy Court held that (i) Appellants do not have standing to assert claims predicated on a reduction in the Zohar Funds' value, and (ii) allegations of

"reputational harm, litigation costs, and harm to Ms. Tilton's control rights and debt and equity positions in the Portfolio Companies are not sufficient to justify equitable subordination."   A115-16 (Order at 38-39, n.284).   Appellants' claim against AMZM is based solely on such alleged harms.   As such, the Bankruptcy Court's decision must stand for this reason as well.

## **LIMITED STATEMENT OF THE CASE[4]**

## I.   **AMZM REPLACES APPELLANTS AS COLLATERAL MANAGER FOR THE ZOHAR FUNDS**

5.     The Debtors (the "Zohar Funds") are investment funds that raised money from investors and used that money to buy loan obligations issued by distressed companies (the "Portfolio Companies").  A004 (Compl. ¶ 2).

6.     From the Debtors' origination through 2016, companies affiliated with Tilton (collectively, the "Patriarch Managers" or "Patriarch") served as the Debtors' collateral managers, and were responsible for the purchase, origination, and management of the loans and investments made and held by the Debtors in the Portfolio Companies.  A081 (Order at 4).

7.     On February 3, 2016, Ms. Tilton tendered the voluntary resignations of the Patriarch Managers as collective collateral manager for the Debtors and in March

---

[4]     AMZM joins and incorporates by reference the *Answering Brief of Appellees MBIA Inc. and MBIA Insurance Corporation* and the *Answering Brief of Appellee Zohar III Controlling Class*.

2016, the Debtors, acting at the direction of their senior noteholders, retained AMZM as successor collateral manager.  A015 (Compl. ¶ 46).

## II.    AMZM BRINGS MERITORIOUS LITIGATION AGAINST APPELLANTS

8.    Following its appointment as collateral manager, AMZM caused the Debtors to commence the Zohar Litigation, which consists of (i) the "Books and Records Action" (*Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*, C.A. No. 12247-VCS (Del. Ch.)); (ii) the "Delaware 225 Action" (*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch.)); and (iii) the "SDNY Action" (*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, No. 17-cv-00307-WHP (S.D.N.Y.)), and to take certain other actions to remove and replace Ms. Tilton as manager or director at certain Portfolio Companies.  *See, e.g.*, A005-006 (Compl. ¶¶ 4, 6); A052 (*id.* ¶¶ 170-71); A056 (*id.* ¶¶ 180-81); A061-62 (*id.* ¶¶ 193-96).  These actions, which form the basis for Appellants' equitable subordination claim against AMZM, are summarized below.

### A.    The Books and Records Action

9.    AMZM brought the Books and Records Action against the Patriarch Managers because the Patriarch Managers violated their contractual obligation owed to the Debtors to turn over the Debtors' books and records to AMZM.  *See* A1199-1202 (*Zohar CDO 2003-1 v. Patriarch Partners, LLC*, C.A. No. 12247-VCS, 2016 WL 6248461 (Del. Ch. Oct. 26, 2016) (the "Books & Records Decision"), at 16-19.

In particular, the Patriarch Managers failed to turn over twelve categories of documents specifically requested by AMZM.  A1219-34 (*Id.* 36 -51).  The court ruled in AMZM's and the Debtors' favor with respect to all twelve categories of documents.  *Id.*

10.     One of the categories of documents that the Patriarch Managers were ordered to turn over were "Equity Documents" related to a type of equity interest dubbed "equity upside interests" that the Patriarch Managers were "adamant" were not owned by the Debtors.  A1222 (*id.* at 39).  The court ultimately declined to resolve the question of who owned these so-called "equity upside interests," finding instead that even if the "equity upside interests" were not owned by the Debtors, at the very least they "related to the [Zohar Funds'] [c]ollateral," and thus Equity Documents relating to the "equity upside interests" should be provided to the Debtors.  A1222-23 (*id.* at 39-40).  The court observed, however, that "Patriarch's attempt at trial to explain or describe equity upside interests was, at best, confusing and, at worst, codswallop."  A1222 (*id.* at 39, n.128).  The Chancery Court's decision was affirmed in full by the Delaware Court of Appeals.  *See Patriarch Partners LLC v. Zohar CDO 2003-1, LLC*, 165 A.3d 288 (Del. 2017).

**B.     The Delaware 225 Action**

11.     On November 23, 2016, AMZM executed written consents (the "Consents") pursuant to its authority under § 2.2(c) of the AMZM Collateral

Management Agreements (the "CMAs") that removed Ms. Tilton from the boards of three Portfolio Companies and elected new directors in her place. A054 (Compl. ¶¶ 175-76; A1076 (Zohar I CMA § 2.2); A1107 (Zohar II CMA § 2.2); A1137 (Zohar III CMA § 2.2).

12.     On November 29, 2016, with the benefit of the documents they received pursuant to the Books and Records Decision, and in light of the fact that the Books and Records Decision did not resolve the issue of who owned the equity interests, Zohar II and Zohar III, acting by and through AMZM, initiated the Delaware 225 Action—an expedited special proceeding under Section 225 of the Delaware General Corporations Law—seeking a determination that the Debtors, and not Ms. Tilton, own the equity in three Portfolio Companies and have the power to name those companies' directors. *In re Zohar III, Corp.*, 2019 WL 6910285, at *2 (D. Del. Dec. 19, 2019). The Debtors were listed as the owners on stock certificates for those three companies, but Ms. Tilton claimed that she was the true owner of the companies' stock or, alternatively, that certain purportedly "irrevocable" proxies that Ms. Tilton granted herself before the Patriarch Managers stepped down as collective collateral manager of the Debtors prevented the Debtors from appointing new directors. *See* A1241-43 (*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS, 2017 WL 5956877 (Del. Ch. Nov. 30, 2017) (the "Delaware 225 Decision")) at 5-7.

13.     Following a six-day trial, the Chancery Court issued a 96-page decision answering the question it had declined to reach in the Books and Records Action, finding that "the Zohar Funds are the beneficial owners of the Portfolio Companies' equity," and that the "irrevocable" proxies were invalid because, among other reasons, they violated the Zohar Indentures. A1243 (*id.* at 7). Based on these rulings, the court found that "[t]he Zohar Funds' designees are the rightful directors of the Portfolio Companies" and that the written consents were valid and effective. A1243, A1331 (*id.* at 7, 95). AMZM subsequently issued additional written consents concerning other Portfolio Companies. A062 (Compl. ¶ 195).

14.     Ms. Tilton appealed the Delaware 225 Decision, but the appeal was dismissed with prejudice as moot after Tilton agreed to withdraw her objections to the written consents and the Debtors' claim of beneficial ownership of the equity interest in the Portfolio Companies. A099 (Order at 22).

### C.     The SDNY Action

15.     On January 16, 2017, the Debtors, acting by and through AMZM, initiated an action in the District Court for the Southern District of New York against Appellants and certain other Tilton-affiliated companies for violation of 18 U.S.C. § 1961, known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and related state law claims. A084 (Order at 7).

16.    On November 27, 2017, Appellants filed a third-party complaint against AMZM and others in the SDNY Action, alleging, among other things, claims for breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. *See* A1486-515 (*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 1:17-cv-00307-PKC-RWL, [D.I. 88] (S.D.N.Y. Nov. 27, 2017)) (the "Third-Party Complaint") at 146-75.   Appellants alleged in the Third-Party Complaint that AMZM breached its contractual and fiduciary duties by (i) commencing the Zohar Litigation, which Appellants characterized as "sham litigations," and (ii) failing to issue trustee reports.   A1466-67, 1470-73, 1480 (Third-Party Compl. ¶¶ 125-129, 136-142, 161-162).  These same allegations form the basis for Appellants' equitable subordination claim against AMZM in the Bankruptcy Court. *See, e.g.*, A056, A062 (Compl. ¶¶ 180, 196).

17.    On December 29, 2017, the late Honorable William H. Pauley III in the Southern District of New York dismissed the Debtors' RICO claim pursuant to Section 107 of the Private Securities Litigation Reform Act, 18 U.S.C. § 1964(c) (the "RICO Amendment"), which bars any RICO claim predicated on the purchase or sale of securities. *See* A1519 (*Zohar CDO 2003-1, Ltd. v. Patriarch Partners,*

*LLC*, 286 F. Supp. 3d 634, 651 (S.D.N.Y. 2017) (the "RICO Decision")) at 651.[5]

However, Judge Pauley explained in the RICO Decision that the RICO claim was

"neither 'immaterial' nor 'wholly insubstantial and frivolous,'" A1537 (*id.* at 652,

n.9), and instead found that "the Complaint specifically and thoroughly alleges a

number of predicate acts to support Zohar's theory of liability under RICO," and

that dismissal of the claims under the RICO Amendment "does not render the claim

immaterial, insubstantial, or frivolous." *Id.*

18.    On September 29, 2021, the Honorable P. Kevin Castel in the Southern

District of New York dismissed all of Appellants' claims against AMZM in the

Third-Party Complaint with prejudice.  *See* A159-60 (*Zohar CDO 2003-1, Ltd. v.*

*Patriarch Partners, LLC*, (S.D.N.Y. Sept. 29, 2021), *amended*, 2021 WL 4710787

(S.D.N.Y. Oct. 7, 2021) (the "SDNY Decision")).  Judge Castel held that AMZM

did not have any obligation to issue trustee reports, and that Appellants did not

"plausibly" allege that any of the actions constituting the Zohar Litigation were

frivolous or sham lawsuits.  A153-54 (*id*. at 36-37).  In rejecting Appellants' "sham

litigation" allegations, Judge Castel stated:

> First, the AMZM and the Zohar Funds were successful in both the
> books and records suit and the Delaware 225 action.  A party
> successfully vindicating its rights can hardly be considered frivolous or

---

[5]  As the dismissed RICO claim provided the basis for federal subject matter jurisdiction, the court proceeded to dismiss the remaining state law causes of action for lack of subject matter jurisdiction.  *Id.*

> a "sham." Finally the Patriarch Parties allege that the instant litigation [the RICO Action] is a "sham." But even though the underlying claims were dismissed, this Court specifically noted that "though this Court has concluded that some of those predicate acts run afoul of the RICO Amendment, such a determination does not render the claim immaterial, insubstantial, or frivolous." Indeed, most of the claims in the instant litigation were dismissed due to lack of subject matter jurisdiction, not on the merits. While the Patriarch Parties repeatedly label these as "sham" litigations, "[a] pleading that offers mere labels and conclusions . . . will not do."

A153 (*id*. at 36). Judge Castel stated further that "AMZM's alleged 'participation' in MBIA's 'scheme' amounts to no more than AMZM pursuing litigation with the Patriarch Parties over the ownership of the Portfolio Company equity and attempting to remove Tilton from her positions at the Portfolio Companies." *Id.*

19.   Appellants were granted permission to amend the Third-Party Complaint but did not do so.

## III.   APPELLANTS FILE AN EQUITABLE SUBORDINATION CLAIM AGAINST AMZM BASED PRIMARILY ON THE ZOHAR LITIGATION

20.   On October 1, 2019—after Appellants filed the Third-Party Complaint in the SDNY Action but prior to the issuance of the SDNY Decision—Appellants filed their complaint (as amended, the "Complaint"), in the case below (the "Bankruptcy Court Action"), seeking, among other things, equitable subordination of AMZM's secured claim against the Debtors' estates. Appellants' equitable subordination claim against AMZM was based on the same allegations underlying

11

Appellants' claims in the Third-Party Complaint—the Zohar Litigation and the alleged failure to issue trustee reports.[6]

21.    With respect to the Zohar Litigation, Appellants alleged that it constituted "a campaign of sham and frivolous litigation against Ms. Tilton" that "served no legitimate purpose."  A006, A051 (Compl. ¶¶ 6, 169).  As for damages, Appellants alleged that the Zohar Litigation "triply damaged Ms. Tilton and the other Plaintiffs" because it "decreased the value of the Portfolio Companies, which decreased the value of the Zohar Funds' preference shares owned by Plaintiffs," required the Zohar Funds to pay legal fees that "depleted the funds available to pay Plaintiffs as noteholders and any potential payout to Plaintiffs at the end of the waterfall," and caused Appellants to incur legal fees and expenses in defending against the litigation.  A059 (Compl. ¶ 187).

## IV.    THE BANKRUPTCY COURT DISMISSES APPELLANTS' CLAIMS WITH PREJUDICE

22.    AMZM and the other Defendants filed motions to dismiss the Complaint on October 30, 2020.  On March 25, 2022, the Bankruptcy Court granted those motions in full, with prejudice.  *See* A078 (Order at 1).  With respect to

---

[6]    Appellants have since conceded that the alleged failure to issue trustee reports is not an independent basis for equitable subordination against AMZM. A101 (Order at 24, n.194); *Appellants' Opposition to Motions to Dismiss*, Case No. 19-ap-50390 [D.I. 103] (the "Opposition") ¶ 70 ("AMZM's failure to prepare trustee reports—one of the primary roles of Collateral Manager—is not an independent basis for equitable subordination.").

Appellants' claim against AMZM, the Bankruptcy Court held that Appellants were "collaterally estopped from pursuing an equitable subordination claim on the basis of" the Zohar Litigation because the SDNY Decision "thoroughly considered and rejected the [Appellants'] contentions that . . . the B&R Action, 225 Action, and the RICO Action were sham litigations pursued for the purpose of removing Ms. Tilton from the Portfolio Companies and stealing her equity." A097-100.[7]   The Bankruptcy Court squarely considered and rejected Appellants' argument that the SDNY Decision should not have preclusive effect because it did not address AMZM's motivations in bringing the Zohar Litigation:

> Plaintiffs argue that Judge Castel did not determine the fundamental motivations of AMZM—only that there were nonfrivolous legal grounds for AMZM's litigation. Judge Castel determined the issue that this Court would be tasked with deciding here if the proceeding were to continue—namely, whether the litigation pursued by AMZM was a sham; in other words, whether it was brought for a legitimate purpose or to abuse or for some other improper purpose. Faced with Plaintiffs'

---

[7]   The Bankruptcy Court also held that (i) the SDNY Decision collaterally estopped Appellants from arguing that AMZM was responsible for providing trustee reports, (ii) the written consents issued by AMZM could not form the basis of an equitable subordination claim because they were determined to be valid by the 225 Decision, and (iii) Appellants' vague claims that AMZM lacked qualifications necessary to be a collateral manager failed to support their claim given that such allegations "cannot alone justify the extreme remedy of subordination," and "AMZM did not control its own appointment." A100-101 (Order at 23, 24). Appellants did not appeal, and have thus waived any appeal of, these holdings. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 354 (3d Cir. 2002) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.") (quoting *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993)).

same arguments regarding the Defendants' motivations, His Honor answered that question based on the objective merits of the litigations and determined that nothing was a sham. Opinion and Order, at \*18; *see also Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 464 (S.D.N.Y. 2020) (denying Zohar Funds' request to transfer venue of SDNY Action to this Court and noting that "paragraphs in the Subordination Complaint are grafted verbatim from the Patriarch Complaint. . . . [T]he "steal the equity" themes that pervade the Patriarch Complaint are infused in the Subordination Complaint.").

*Id.* (Order at 23, n.190) (original modification).

23.    The Bankruptcy Court noted further that given the "objective realities (including the parties' contractual rights and successful litigation of those rights)," the likelihood that AMZM and other Defendants engaged in a "scheme" to "take and sell Ms. Tilton's equity for their benefit and to harm her . . . is dubious" and insufficiently pled by the Complaint.  A112-13 (Order at 35-36).  The Bankruptcy Court continued that "the real issue is whether Defendants did anything wrong in pursuit of their [alleged litigation] 'scheme' for which they can be held liable."  *Id.* The Bankruptcy Court answered that question in the negative, holding that "as a general matter, the pursuit of one's legal rights, including the exercise of contractual rights, may not be grounds for equitable subordination . . . ," and distinguishing Appellants' cases as involving inapposite scenarios where creditors engaged in inequitable conduct.  A113-14 (*id.* at 36-37).  The Bankruptcy Court concluded that "Defendants should not be punished for ensuring that the contractual rights and remedies of the Zohar Funds and themselves were enforced."  A116 (*id.* at 39, n.284).

24.    The Bankruptcy Court also held that Appellants' claims suffer from additional fatal infirmities, including that (i) arguments predicated on a reduction in the value of the Zohar Funds are estate causes of action that Appellants do not have standing to raise; (ii) "reputational harm, litigation costs, and harm to Ms. Tilton's control rights and debt and equity positions in the Portfolio Companies" are not related to Appellants' positions as creditors of the Debtors and thus cannot justify equitable subordination; and (iii) Defendants' "efforts to secure the Zohar Funds' ownership and control rights proved successful and served to gather and preserve" the Zohar Funds' assets for the benefit of all creditors. *Id.*

25.    Finally, the Bankruptcy Court denied Appellants' request for leave to further amend the Complaint, noting that "[s]ignificant time, effort, and resources of not only the Defendants but of numerous courts have been expended on Plaintiffs' allegations that have been rehashed over and over," and that any amendment would be "futile and potentially abusive to the Defendants and this Court." A117 (*id.* at 40).

## V.    APPELLANTS APPEAL PORTIONS OF THE BANKRUPTCY COURT'S DISMISSAL ORDER

26.    Appellants appealed the Order on March 29, 2022. *See Notice of Appeal*, Case No. 19-ap-50390 [D.I. 237]. As applicable to AMZM, the issues presented in the appeal are whether the Bankruptcy Court erred in holding that, with respect to the Zohar Litigation, (i) the "doctrine of collateral estoppel barred the

15

Amended Complaint's allegations that Appellees behaved inequitably," and (ii) "Appellants failed to sufficiently allege that Appellees acted with an improper purpose that amounted to inequitable conduct justifying subordination." App. Br. at 6. As discussed in greater detail below, neither of these holdings is in error. Additionally, dismissal of Appellants' claim against AMZM still would be required even if these holdings were reversed, based on the Bankruptcy Court's additional and independent holding—which Appellants have not appealed—that Appellants may not pursue claims based on a reduction in the value of the Zohar Funds, reputational harm, litigation costs, or harm to Ms. Tilton's control rights or debt and equity positions in the Portfolio Companies.[8]

## **ARGUMENT**

## I. **THE BANKRUPTCY COURT CORRECTLY HELD THAT COLLATERAL ESTOPPEL BARS APPELLANTS' "LITIGATION CAMPAIGN" THEORY OF EQUITABLE SUBORDINATION**

27. "Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior lawsuit." *In re Docteroff*, 133 F.3d at 214; *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc*., 458 F.3d 244, 249 (3d Cir. 2006).

---

[8] As AMZM argued below, dismissal of Appellants' equitable subordination claim against AMZM is also necessitated by the *Noerr-Pennington* doctrine. *See AMZM's Memorandum in Support of Motion to Dismiss*, Case No. 19-ap-50390 [D.I. 82] (the "Motion") at 14-17; *AMZM's Reply in Support of Motion*, Case No. 19-ap-50390 [D.I. 113] at 3-6. Given its holding that the claim is subject to dismissal on other grounds, the Bankruptcy Court did not reach this argument.

In the Third Circuit, a party is collaterally estopped from relitigating an issue where: (i) the issue sought to be precluded is the same as the one involved in the prior action; (ii) the issue was actually litigated; (iii) the issue was determined by a valid and final judgment; and (iv) the determination was essential to the prior judgment. *Docteroff*, 133 F.3d at 214.

28.     Appellants argue that the Bankruptcy Court erred in applying collateral estoppel to bar their equitable subordination claim against AMZM on two bases: (i) they argue that the issue decided in the SDNY Action is not the same as the issue presented to the Bankruptcy Court, because "the standards governing Patriarch's breach of contract claims against AMZM in the SDNY Action were narrower than those applicable in this equitable subordination proceeding," and (ii) they argue that Judge Castel's determinations regarding Appellants' "sham" litigation, "steal the equity" allegations were not "essential to" the SDNY Decision, because Judge Castel did not "address, much less determine, the Amended Complaint's allegations that AMZM's purposes in pursuing its litigation campaign against Patriarch were illegitimate" and "solely designed to harass and harm Plaintiffs."  App. Br. at 43-45. Neither of these arguments has merit.

29.     First, the factual issues that the Bankruptcy Court would have had to determine to resolve Appellants' equitable subordination claim against AMZM are exactly the same as the factual determinations that Judge Castel made in the SDNY

17

Action.  In the SDNY Action, Appellants alleged that AMZM breached its duties under the governing collateral management agreement "by aiding MBIA, including through prosecuting various 'sham' litigations, attempting to remove Tilton from her positions at the Portfolio Companies, and participating in MBIA's 'scheme' to steal the Portfolio Companies' equity for itself."  A152 (SDNY Decision at 35). Appellants' equitable subordination claim against AMZM is based on identical allegations, alleging that AMZM engaged in a "campaign of sham and frivolous litigation" designed to "bleed [Ms. Tilton] dry, wrest control of the Portfolio Companies from Plaintiffs, and seize the valuable Portfolio Company equity."  A006, A051 (Compl. ¶¶ 6, 169).

30.    Judge Castel determined that these allegations did "not plausibly allege[] that the litigations brought on behalf of the Zohar Funds [*i.e.*, the Zohar Litigation] are 'sham' litigations."  A153 (SDNY Decision at 36).  Additionally, Judge Castel found that "AMZM's alleged 'participation' in MBIA's 'scheme' amounts to no more than AMZM pursuing litigation with the Patriarch Parties over the ownership of the Portfolio Company equity and attempting to remove Tilton from her positions at the Portfolio Companies."  A153-54 (*id.* at 36-37) (cleaned up). Thus, Judge Castel held that Appellants had not adequately alleged that the Zohar Litigation was brought to "steal the Portfolio Companies' equity," finding instead that they were legitimately commenced to determine the owners of, and remove Ms.

Tilton from her control positions at, the Portfolio Companies.  A152-53 (*id.* at 35-36).

31.    As the Bankruptcy Court correctly observed, in so holding, Judge Castel:

> determined the issue that this Court would be tasked with deciding here if the proceeding were to continue—namely, whether the litigation pursued by AMZM was a sham; in other words, whether it was brought for a legitimate purpose or to abuse or for some other improper purpose. Faced with Plaintiffs' same arguments regarding the Defendants' motivations, His Honor answered that question based on the objective merits of the litigations and determined that nothing was a sham. Opinion and Order, at *18; *see also Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 464 (S.D.N.Y. 2020) (denying Zohar Funds' request to transfer venue of SDNY Action to this Court and noting that "paragraphs in the Subordination Complaint are grafted verbatim from the Patriarch Complaint. . . . [T]he "steal the equity" themes that pervade the Patriarch Complaint are infused in the Subordination Complaint.").

A100 (Order at 23, n.190).  The Bankruptcy Court thus correctly held that Appellants are collaterally estopped from relitigating the factual question of whether the Zohar Litigation comprised "sham" litigations commenced for improper purposes.

32.    The Third Circuit's ruling in *Docteroff* underscores the weakness of Appellants' assertion that collateral estoppel does not apply because Judge Castel determined whether Appellants stated a claim for breach of contract and the Bankruptcy Court was determining whether Appellants stated a claim for equitable subordination.  In *Docteroff*, the lower courts held that a prior default judgment holding the debtor liable for fraud and embezzlement in connection with plaintiffs'

debt collaterally estopped the debtor from arguing that the debt was not subject to the exception to discharge for debt incurred by fraud. 133 F.3d at 214-16. The debtor appealed, arguing that the decision was in error because "the dischargeability issue is not the same issue as the one previously litigated and, thus, could not have been essential to the earlier judgment." *Id*. at 214-15. The Third Circuit affirmed the ruling, explaining that "[t]aking [the debtor's] argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise bankruptcy issue would never have been litigated in a court action prior to the filing of the petition in bankruptcy." *Id*. at 215. Such a conclusion, the court held, "defies common sense and reason and is at odds with" Supreme Court precedent. *Id*.

33.     Here, Appellants, like the debtor in *Docteroff*, argue that they should be permitted to relitigate the exact same factual issue already decided by a prior court, because the legal issue to which that factual determination was relevant was not the same in the two actions. As the Third Circuit has made clear, there is "no merit" to such an argument. *Id.* at 215.

34.     Appellants' reliance on *In re Astroline* is misplaced. App. Br. at 42. The court in *Astroline* held that a prior ruling that the defendant's exercise of control over the debtor was insufficient for the defendant to be deemed a general partner under Massachusetts law did not collaterally estop a chapter 7 trustee from arguing that the debtor was an insider for equitable subordination purposes, because

20

"[g]eneral partners are but one subset of those who could be considered 'insiders,'" and "the broader issue of whether the Defendant was an insider was not litigated in the prior proceeding."   226 B.R. at 327-28.   Accordingly, while the question of whether the defendant was a general partner of the debtor was "precluded from relitigation under the criteria for collateral estoppel," the question of whether there were other bases for the defendant to be deemed an insider was not.  *Id*. at 328.

35.     *Astroline* thus supports, rather than conflicts with, the Bankruptcy Court's holding.   Just as the trustee in *Astroline* was collaterally estopped from relitigating the defendant's general partner status, Appellants are collaterally estopped from relitigating whether the Zohar Litigation was a "sham" commenced for an improper purpose.   And unlike *Astroline*, where there were additional potential bases for the trustee's insider allegation, the sole bases for Appellants' equitable subordination claim against AMZM here are their "sham litigation," "steal the equity" allegations.[9]  Without these allegations, the claim necessarily fails, and must be dismissed.

36.     Indeed, the *Shore Road* holding discussed in *Astroline* is squarely on point here.  *Id.* at 328 (citing *In re 9281 Shore Road Corp.*, 214 B.R. 676 (Bankr.

---

[9]     As noted, the Bankruptcy Court found that Appellants' additional allegations were insufficient to state a claim for equitable subordination, and Appellants did not appeal, and have therefore waived, that ruling.  *United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008); *Coffey*, 300 F.3d at 354.

21

E.D.N.Y. 1997)).  In *Shore Road*, the debtor asserted as an affirmative defense in a prior mortgage foreclosure proceeding that the plaintiff lender had engaged in fraud. *Shore Road*, 214 B.R. at 682.  The state court presiding over the foreclosure action granted summary judgment in the lender's favor, concluding that the debtor "failed to demonstrate any fraudulent activity" by the lender.  *Id*.  The debtor subsequently filed an action against the lender in bankruptcy court, seeking, among other things, equitable subordination of the lenders' claims based on allegations of the same fraudulent activity that the state court had rejected.  The bankruptcy court dismissed the equitable subordination claim as barred by collateral estoppel, stating:

> the instant case . . . is premised upon the identical factual allegations raised by the Debtor in the foreclosure action.  Furthermore, in both actions the Debtor claimed that Seminole engaged in fraudulent conduct.  Yet, the Debtor seeks to relitigate this claim in the Bankruptcy Court under a different legal theory and remedy—equitable subordination.  However, . . . where the same allegations of misconduct were raised in the first action and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claim.

*Id*. at 690.

37.    Here, as in *Shore Road*, Appellants seek to subordinate AMZM's claim based on "identical factual allegations" raised and rejected in the SDNY Action.  *Id.* As the *Shore Road* holding makes clear, since these issues have already been "addressed and determined" by Judge Castel, "collateral estoppel precludes relitigating" them before the Bankruptcy Court.  *Id.* at 691.

38.    Appellants' second argument—that Judge Castel "did not address, much less determine, the Amended Complaint's allegations that AMZM's purposes in pursuing its litigation campaign against Patriarch were illegitimate" and "solely designed to harass and harm Plaintiffs"—fares no better.  App. Br. at 44-45.  As noted, Judge Castel did address these allegations, finding that the Third-Party Complaint failed to support them, and showed instead that the Zohar Litigation was designed to determine "the ownership of the Portfolio Company equity and attempt[] to remove Tilton from her positions at the Portfolio Companies."  A153-54 (SDNY Decision at 36-37).

39.    Moreover, the Bankruptcy Court made its own determination that Appellants' equitable subordination claim against AMZM cannot stand given Judge Castel's ruling that the Zohar Litigation was not frivolous or a sham.  Specifically, the Bankruptcy Court held that "as a general matter, the pursuit of one's legal rights, including the exercise of contractual rights, may not be grounds for equitable subordination . . ."  A113 (Order at 36).  The Bankruptcy Court addressed the exact cases Appellants rely on for their assertion to the contrary, finding that those cases "present facts distinct from those here" because the creditor defendants "exceeded [their] authority under the loan agreement or . . . acted inequitably in exercising [their]

rights under the agreement." App. Br. at 44, A113-14 (Order at 36-37).[10] The

Bankruptcy Court thus appropriately concluded that it would "not punish [AMZM,

MBIA and the Zohar III Controlling Class] with the extreme and harsh remedy of

subordination for electing not to" "abandon their rights and claims to control the

Zohar Funds and the Portfolio Companies." A115 (Order at 38). There is no basis

for this holding to be reversed.

## II.    THE BANKRUPTCY COURT'S DECISION REQUIRES DISMISSAL OF THE CLAIM AGAINST AMZM IRRESPECTIVE OF THE OUTCOME OF THIS APPEAL

40.    Even if the Bankruptcy Court erred in giving preclusive effect to the

SDNY Decision (it did not), the Bankruptcy Court's dismissal of Appellants' claim

against AMZM must be affirmed based on independent holdings that Appellants

have not appealed. *United States v. Shakir*, 616 F.3d 315, 319 n.1 (3d Cir. 2010)

---

[10]    Specifically, the Bankruptcy Court noted that (i) the creditor in *Citicorp Venture Capital. Ltd. v. Comm. Of Unsecured Creditors Holding Unsecured Claims*, 323 F.3d 228 (3d Cir. 2003) "repeatedly litigated issues that were decided against it by earlier court decisions in order to prevent a reorganized debtor from engaging in a value-enhancing sale transaction," (ii) the creditor in *O'Halloran v. Prudential Savings Bank (In re Island View Crossing II, L.P.)*, 604 B.R. 181 (E.D. Penn. 2019) was alleged to have "intentionally breached lending agreements by making bad faith demands for documents, which then caused debtor's construction project to fail," and (iii) the creditor in *Schubert v. Lucent Tech., Inc. (In re Winstar Commc'ns. Inc.)*, 554 F.3d 382 (3d Cir. 2009) "abused its contractual authority to use its 'sole discretion' in order to deliberately delay issuing a refinancing notice under the governing credit agreement to prevent the public disclosure of the debtor's poor financial health and thereby inducing other creditors to provide it funds." A113-14 (Order at 36-37).

("[W]hen two independent reasons support a decision, neither can be considered obiter dictum; each represents a valid holding of the court."); *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1229 (3d Cir. 1995) (upholding bankruptcy court's decision on several, alternative grounds).

41.     The Bankruptcy Court held that (i) claims predicated on the allegation that Defendants' actions "reduced the value of the Zohar Funds give rise to an estate cause of action that Plaintiffs do not have standing to raise," and (ii) allegations of "reputational harm, litigation costs, and harm to Ms. Tilton's control rights and debt and equity positions in the Portfolio Companies are not sufficient to justify equitable subordination as, among other things, the harm does not relate to Plaintiffs' position as creditors of the Debtors."   A115-16 (Order at 38-39 n.284).   And Appellants' claim against AMZM is based solely on such alleged harms.   *See* A059 (Compl. ¶ 187) (alleging that AMZM's "litigious campaign . . . triply damaged Ms. Tilton and other Plaintiffs because: (1) it decreased the value of the Portfolio Companies, which decreased the value the Zohar Funds' preference shares owned by Plaintiffs; (2) it resulted in the use of the Zohar Funds' cash to pay millions of dollars in attorney's fees and litigation costs, which depleted funds available to pay Plaintiffs as noteholders and any potential payout to Plaintiffs at the end of the waterfall; and (3) caused the Plaintiffs to incur tens of millions of dollars in legal fees and expenses defending against Defendants' scheme, as well as significant additional expenses.");

A070 (*id.* ¶ 226) (alleging AMZM's litigation strategy "tarnish[ed] the Portfolio Companies" which reduced the value of the Debtors); A071 (*id.* ¶ 227) (alleging Appellees' actions "caused Plaintiffs to suffer significant money damages, including tens of millions of dollars in legal fees, and reputational harms").[11]  Accordingly, the Bankruptcy Court's decision necessitates dismissal of Appellants' claim against AMZM irrespective of the outcome of this appeal.

---

[11]  *See also* A058 (Compl. ¶ 185) (alleging Zohar Litigation "made third-party companies reluctant to conduct business with the Portfolio Companies, caused Portfolio Companies to lose business opportunities, and damaged the value of Plaintiffs' interests in the Portfolio Companies."); A057 (*id.* ¶ 183) (alleging that the RICO Action caused "[t]hird-party companies . . . to sever their ties with her and various Portfolio Companies" and that "the loss of these critical business relationships negatively impacted the value of Plaintiffs' interests in the Portfolio Companies, severely impaired Ms. Tilton's ability to turn the companies around, and substantially decreased the value of Plaintiffs' Zohar Funds notes and Ms. Tilton's preference shares"); A057 (*id.* ¶ 183) (alleging RICO Action was filed to "smear Ms. Tilton and the other Plaintiffs, and ultimately destroy her reputation, career, and business operations" and "subjected Ms. Tilton to sensationalist and misleading news articles and business harms"); A059 (*id.* ¶ 187) (alleging the Zohar Litigation "caused the Plaintiffs to incur tens of millions of dollars in legal fees and expenses defending against Defendants' scheme, as well as significant additional expenses"); A055 (*id.* ¶ 177) (alleging the Delaware 225 Action was filed to validate the written consents that "contravened Ms. Tilton's ultimate and beneficial ownership of the equity shares"); A052 (*id.* ¶ 171) (alleging Books and Records Action was filed in furtherance of an attempt to "to wrest control of the Portfolio Companies from Ms. Tilton").

## <u>CONCLUSION</u>

For the foregoing reasons, AMZM respectfully requests that the Court affirm the Bankruptcy Court's dismissal with prejudice of the Appellants' claim against AMZM.

Dated: June 15, 2022
   Wilmington, Delaware

MORRIS NICHOLS ARSHT &
TUNNELL LLP

*/s/ Tori L. Remington*
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Tori L. Remington (No. 6901)
1201 North Market Street, 16th Floor
Wilmington, DE 19899-1347
rdehney@morrisnichols.com
mharvey@morrisnichols.com
tremington@morrisnichols.com

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Jonathan E. Pickhardt, Esq.
Deborah Newman, Esq.
Blair Adams, Esq.
Zachary Russell, Esq.
51 Madison Avenue, 22nd Floor
New York, NY 10010
jonpickhardt@quinnemanuel.com
deborahnewman@quinnemanuel.com
blairadams@quinnemanuel.com
zacharyrussell@quinnemanuel.com

*Counsel to Alvarez & Marsal Zohar
Management*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. Bankr. P. 8015(h), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(A).  Exclusive of the exempted portions of the brief specified in Fed. R. Bankr. P. 8015(g), the brief contains 7,329 words.  The brief has been prepared using Microsoft Word. The undersigned has relied upon the word count feature of this word processing software in preparing this certificate.

Dated: June 15, 2022                           */s/ Tori L. Remington*
                                               Tori L. Remington