No. 22-400-TLA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

IN RE: ZOHAR III, CORP., *et al.*,

*Debtors.*

LYNN TILTON, et al.,

*Appellants,*

v.

MBIA INC., *et al.,*

*Appellees.*

On Appeal from the United States Bankruptcy Court
for the District of Delaware
Bankruptcy No. 18-10512 (KBO), Adversary No. 19-50390 (KBO)

## APPELLEE U.S. BANK NATIONAL ASSOCIATION'S
## ANSWERING BRIEF

John W. Weiss (No. 4160)
**PASHMAN STEIN
WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Ste 4202
Holmdel, New Jersey 07733
(201) 373-2071
jweiss@pashmanstein.com

Alexander S. Lorenzo
(*pro hac vice application pending*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
(212) 210-9400
alexander.lorenzo@alston.com

Dated: June 15, 2022

*Attorneys for U.S. Bank National
Association, solely in its capacity as
Trustee under the Indentures*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee U.S. Bank National Association, solely in its capacity as Trustee under the Debtors' respective Indentures ("**U.S. Bank**"), states in accordance with Rule 7.1 of the Federal Rules of Civil Procedure as follows: U.S. Bank is a wholly-owned subsidiary of U.S. Bancorp, a publicly-held corporation.

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................2

STATEMENT OF THE CASE...............................................................3

PROCEDURAL HISTORY...................................................................13

SUMMARY OF ARGUMENT .............................................................15

ARGUMENT ........................................................................................16

I.      BY FAILING TO CHALLENGE THE BANKRUPTCY
        COURT'S DETERMINATION THAT THE TRUSTEE IS A
        NON-INSIDER, APPELLANTS CONCEDE THAT THE
        HEIGHTENED NON-INSIDER STANDARD FOR
        INEQUITABLE CONDUCT APPLIES TO THEIR CLAIM
        FOR EQUITABLE SUBORDINATION...........................................16

II.     THE JUDICIALLY SUPERVISED AUCTION
        UNDERLYING APPELLANTS' CLAIM AGAINST THE
        TRUSTEE DOES NOT CONSTITUTE INEQUITABLE
        CONDUCT UNDER EITHER THE INSIDER OR THE NON-
        INSIDER STANDARD ...................................................................18

        A.      Appellants Do Not Dispute Multiple, Independent
                Grounds Supporting The Bankruptcy Court's Finding
                That The Trustee Did Not Engage In Inequitable Conduct......19

        B.      Appellants Fail To Identify Any Error In The Bankruptcy
                Court's Order Regarding The Zohar I Auction .......................21

                1.      The Zohar I Auction Was Commercially
                        Reasonable...................................................................22

                2.      Appellants' Acknowledgement That Octaluna
                        Failed to Exercise Its Last Look Rights
                        Undermines Appellants' Allegation That The
                        Zohar I Auction Depressed The Price Of The
                        Collateral......................................................................24

III.   THE BANKRUPTCY COURT'S ORDER MAY BE
       AFFIRMED ON TWO ADDITIONAL GROUNDS: THAT
       APPELLANTS FAILED TO PLAUSIBLY ALLEGE EITHER
       THE SECOND OR THIRD ELEMENTS OF AN EQUITABLE
       SUBORDINATION CLAIM ............................................................26

       A.   Appellants Failed To Allege That The Trustee's Conduct
            Injured Them Or Conferred An Unfair Advantage On
            The Trustee .................................................................................27

       B.   Equitable Subordination Is Inconsistent With The
            Provisions Of The Bankruptcy Code ........................................28

CONCLUSION .........................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bank of N.Y. Mellon Trust Co., N.A. v. Miller* (*In re Franklin Bank Corp.*),
    526 B.R. 527 (Bankr. D. Del. 2014) .................................................................18

*Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC*
    *(In re Epic Capital Corp.)*,
    290 B.R. 514 (Bankr. D. Del. 2003) .................................................................18

*Baron v. Pressed Metals of America, Inc.*,
    123 A.2d 848 (Del. 1956) .................................................................................26

*Benjamin v. Diamond (In re Mobile Steel Co.)*,
    563 F.2d 692 (5th Cir. 1977) ............................................................................16

*Ciry of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*,
    No. 21-398 (LPS), 2022 U.S. Dist. LEXIS 56114 (D. Del. Mar. 28, 2022) ......20

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*,
    126 B.R. 63 (9th Cir. 1991) ..............................................................................24

*In re Comprehensive Power, Inc.*,
    578 B.R. 14 (Bankr. D. Mass. 2017) ...........................................................18, 24

*In re Mid-American Waste Sys.*,
    284 B.R. 53 (Bankr. D. Del. 2002) ..............................................................17, 24

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ............................................................................17, 20

*Mocco v. Frumento*,
    710 F. App'x 535 (3d Cir. 2017) ......................................................................11n

*Nicini v. Morra*,
    212 F.3d 798 (3d Cir. 2000) .............................................................................27

*Official Comm. of Unsecured Creditors of Champion Enters. v.*
    *Credit Suisse (In re Champion Enters.)*, Adv. No. 10-50514,
    2010 Bankr. LEXIS 2720 (Bankr. D. Del. Sept. 1, 2010) ................................21n

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v.*
   *Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*,
   590 B.R. 211 (Bankr. D. Del. 2018) ................................................................21n

*Patriarch v. United States Bank Nat'l Ass'n*,
   No. 16 Civ. 7128 (JSR), 2017 U.S. Dist. LEXIS 145365
   (S.D.N.Y. Aug. 25, 2017)................................................................*passim*

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
   181 F.3d 410 (3d Cir. 1999) ................................................................11n

*Scarano v. Central R. Co.*,
   203 F.2d 510 (3d Cir. 1953) ................................................................29

*Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.) (Schubert II)*,
   554 F.3d 382 (3d Cir. 2009)................................................................15

*Storey v. Burns Int'l Sec. Servs.*,
   390 F.3d 760 (3d Cir. 2004) ................................................................27

*Waslow v. MNC Commercial Corp. (In re Paolella)*,
   161 B.R. 107 (Bankr. E.D. Pa. 1993) ................................................................23

*Williams v. LaCrosse*,
   179 F. App'x 141 (3d Cir. 2006) ................................................................16, 20

*Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*,
   No. 17 Civ. 307 (PKC), 2021 U.S. Dist. LEXIS 187081
   (S.D.N.Y. Sep. 29, 2021)................................................................ 12-13

*Zohar CDO 2003-1, LLC. v. Patriarch Partners, LLC*,
   No. 12247-VCS, 2016 Del. Ch. LEXIS 162
   (Del. Ch. Oct. 26, 2016)................................................................10n

## STATUTES

11 U.S.C.§§ 101 *et seq.*................................................................2n

UCC § 9-610 ................................................................8

Defendant-Appellee U.S. Bank National Association ("**U.S. Bank**"), solely in its capacity as trustee ("**Trustee**") under the:

(i)    Indenture, dated as of November 13, 2003, by and among Zohar CDO 2003-1, Limited, Zohar CDO 2003-1 Corp., Zohar CDO 2003-1, LLC, MBIA Insurance Corporation, as credit enhancer, CDC Financial Products Inc. and U.S. Bank, as trustee;

(ii)    Indenture, dated as of January 12, 2005, among Zohar II 2005-1 Ltd., Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, IXIS Financial Products Inc., and LaSalle Bank National Association, as predecessor trustee; and

(iii)    Indenture, dated as of April 6, 2007, between and among Zohar III, Limited, Zohar III, Corp., Zohar III, LLC, Natixis Financial Products, Inc., and LaSalle Bank National Association, as predecessor trustee,

respectfully submits this Answering Brief in response to the Opening Brief of Appellants Lynn Tilton, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Octaluna, LLC, Octaluna II, LLC and Octaluna III, LLC (collectively, "**Patriarch**" or "**Appellants**") (D.I. 30 ("**Open. Br.**")).[1] For the reasons set forth below, the final order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") dismissing Appellants' complaint

---

[1] Except where otherwise indicated, citations to "D.I." refer to docket filings in this appeal pending in the United States District Court for the District of Delaware at Case No. 22 Civ. 400. Citations to "Bankr. D.I." refer to docket filings in the adversary proceeding now subject to appeal and formerly pending in the Bankruptcy Court at Case No. 19-ap-50390. Citations to the Appendix are referred to as "A-###." Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Complaint (as defined below).

for equitable subordination[2] as against the Trustee with prejudice should be affirmed.[3]

## INTRODUCTION

The Bankruptcy Court and Appellants agree that the Trustee is not an insider as defined by the Bankruptcy Code. They also agree that for four independent reasons the Trustee did not act inequitably in its conduct alleged to give rise to Appellants' tired claim—a UCC foreclosure sale of Zohar I collateral, conducted via a public auction and overseen by the Hon. Jed S. Rakoff, U.S. District Judge for the Southern District of New York. Instead, in the two-and-a-half pages of their Opening Brief directed to the Trustee, Appellants raise two discrete issues, neither of which changes the outcome of the case.

Separately and independently, Appellants have not and cannot allege the second and third elements of a claim for equitable subordination, namely, that the Trustee's actions injured Appellants or conferred an unfair advantage on the Trustee, and that equitable subordination is consistent with the provisions of the Bankruptcy Code. For these reasons as further set forth below, as well as those discussed in the

---

[2] Equitable Subordination is codified in section 510(c) of the Bankruptcy Code. Section references are to title 11 of the United States Code (11 U.S.C.§§ 101 *et seq.*, as amended, the "**Bankruptcy Code**.").

[3] The Trustee also adopts, to the extent applicable, the arguments contained in the answering briefs of Appellees MBIA, AMZM, and the Zohar III Controlling Class.

Trustee's motion to dismiss, the Court should affirm the Bankruptcy Court's Order dismissing Appellants' equitable subordination claim against the Trustee with prejudice.

## STATEMENT OF THE CASE

### A.    The Indentures And Other Transaction Documents

#### 1.    The Zohar Transactions Generally

Zohar CLO 2003-1, Limited ("**Zohar I**"), Zohar II 2005-1, Limited ("**Zohar II**"), and Zohar III, Limited ("**Zohar III**," together with Zohar I and Zohar II, the "**Debtors**" or the "**Zohar Funds**") are Cayman Islands, closed-end investment funds created by Lynn Tilton. A-16–18 (Am. Compl. ¶¶ 52–53, 57, 59). Structured as collateralized loan obligations ("**CLOs**"), Debtors made loans to certain distressed companies (the "**Portfolio Companies**"). *See* A-4–5, A-9–11, A-20–21 (Am. Compl. ¶¶ 3, 14–17, 66–67). To fund the loans, Debtors issued debt and equity (preference shares). A-17–18 (Am. Compl. ¶¶ 53, 57, 59). Debtors' assets consisted of secured loans to the Portfolio Companies and equity interests in certain of the Portfolio Companies, which, in turn, served as collateral for the notes issued under the Indentures. *See* A-16–17 (Am. Compl. ¶¶ 52–53); A-203–04 (Indentures (as defined below) at 1–2 (Granting Clauses)).

The Zohar Funds are governed by Indentures,[4] Collateral Management Agreements ("**CMAs**"),[5] and Collateral Administration Agreement. A-18–19 (Am. Compl. ¶ 60). U.S. Bank acts as Trustee under the Indentures. A-12 (Am. Compl. ¶ 23). As relevant here, MBIA Insurance Corporation ("**MBIA**"), a monoline insurer, acted as a "credit enhancer" under the Zohar I Indenture. A-18–19 (Am. Compl. ¶¶ 56, 61). In other words, MBIA "wrapped" or insured certain Class A notes in Zohar I

---

[4] The term "**Indenture(s)**" means the: (i) Indenture, dated as of November 13, 2003, among Zohar I, Zohar CDO 2003-1 Corp., Zohar CDO 2003-1, LLC, MBIA, as credit enhancer, CDC Financial Products Inc., and the Trustee (the "**Zohar I Indenture**") (A-196 *et seq.*); (ii) Indenture, dated as of January 12, 2005, among Zohar II, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, as credit enhancer, IXIS Financial Products Inc., and the Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (the "**Zohar II Indenture**") (A-500 *et seq.*); and (iii) Indenture, dated as of April 6, 2007, among Zohar III, Zohar III, Corp., Zohar III, LLC, Natixis Financial Products, Inc., and the Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (the "**Zohar III Indenture**") (A-765 *et seq.*). Except as indicated otherwise, the provisions of each of the three Indentures are substantially identical and only one citation to the Appendix will be provided for clarity and ease of reference.

[5] The term "**CMA(s)**" refers to the (i) Collateral Manager Agreement, dated March 3, 2016, among Zohar CDO 20013-1 Limited, Zohar CDO 2003-1 LLC, and Alvarez & Marsal Management, LLC as Collateral Manager (the "**Zohar I CMA**") (A-1070 *et seq.*); (ii) the Collateral Management Agreement, dated March 3, 2016 among Zohar II 2015-1, Limited, Zohar II 2005-1, LLC, and Alvarez & Marsal Zohar Management, LLC as Collateral Manager (the "**Zohar II CMA**") (A-1101 *et seq.*); and (iii) the Collateral Management Agreement, dated as of March 3, 2016, among Zohar III, Limited, Zohar III, LLC and Alvarez & Marsal Zohar Management, LLC, as collateral manager (the "**Zohar III CMA**") (A-1132 *et seq.*), which were the operative CMAs at the time of the main events described in the Complaint.

and, upon the occurrence of an Event of Default by Zohar I , was obligated to pay all outstanding principal and accrued but unpaid interest on such Class A notes. A-18–19 (Am. Compl. ¶¶ 56, 61). As part of this role, MBIA was the "Controlling Party" under the Zohar I Indenture. A-8–9 (Am. Compl. ¶ 11).

Patriarch Partners VIII, LLC (**"Patriarch VIII"**), Patriarch Partners XIV, LLC ("**Patriarch XIV**"), and Patriarch Partners XV, LLC ("**Patriarch XV**") (collectively, the **Patriarch Managers**"), affiliates of Appellants, acted as the original collateral managers of the Debtors until they resigned in March 2016. A-17–18 (Am. Compl. ¶¶ 53, 56–59). The Controlling Parties then appointed Alvarez & Marsal Zohar Management LLC ("**AMZM**") in a more limited capacity, to act as collateral manager for the Debtors. A-14 (Am. Coml. ¶ 45).

### 2.    The Trustee's Responsibilities Are Set Forth In The Indentures

The Trustee performs the contractual duties specifically assigned to it in the Indentures. A-12 (Am. Compl. ¶ 23). In return for performing the contractual duties specifically assigned to it in the Indentures, the Trustee is paid under the terms of those same Indentures. *See* A-310 (Indentures § 6.8(a)(i)) (noting the Trustee's fees are "compensation for the Trustee's ordinary services, including custodial services, rendered by it hereunder.").

When an event of default occurs, the "**Controlling Party**" (as to Zohar I and Zohar II) or the "**Controlling Class**" (as to Zohar III) shall, among other rights

expressly identified in the Indentures, "have the right to cause the institution of[,] . . . and direct the time, method and place of conducting any Proceeding for any remedy available to the Trustee for exercising any trust, right, remedy or power conferred on the Trustee," provided, among other things, that the Trustee shall have been provided an indemnity reasonably satisfactory to it. A-298–301 (Indentures §§ 5.4 and 5.5). This right includes, as Ms. Tilton has conceded under oath, the ability of MBIA to direct the Trustee to foreclose on the Zohar I collateral. *See* Bankr. D.I. 98, 170 Ex. 30 ("**Tilton Decl.**") ¶ 113 (admitting that "the Controlling Party has the power to direct the Trustee to sell or foreclose upon all of the Zohar I collateral")); *see also* A-303 (Zohar I Indenture § 5.13) ("[U]pon direction by the Controlling Party (and upon offer of reasonable indemnity against costs, expenses and liabilities to be incurred in connection with such direction)," the Trustee may "sell all or any portion of the Collateral or any rights or interests therein, at one or more public or private sales," or "exercise any remedies of a secured party under the UCC.").

In connection with this foreclosure process, the Indentures provide any holder of a Class B Note with a "last look" right that allows such holder to purchase the available Collateral at a price equal to or greater than the offer price. A-298–99 (Indentures § 5.4(a)(v)(A)). The Indentures also provide that "the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of any Zohar Obligor or the Collateral Manager in

accordance with this Indenture and/or the Controlling Party relating to the time, method and place of conducting any Proceeding for any remedy available to the Trustee. . . ." A-306 (Indentures § 6.1(c)(iii)).

### B.      The Zohar I Auction In 2016

In November 2015, Zohar I defaulted on its payment obligations to the Class A-1 and A-2 noteholders, and MBIA made an insurance payment of approximately $149 million. A-38, A-46 (Am. Compl. ¶¶ 129, 154). On June 27, 2016, MBIA, as Controlling Party under the Zohar I Indenture, directed the Trustee to liquidate the Zohar I collateral at a public sale (the "**Proposed Auction**"), as it was entitled. *See* A-46 (Am. Compl. ¶¶ 154–55); A-298, 303, 306–07 (Zohar I Indenture §§ 5.4(a)(ii), 5.13, 6.1).

On MBIA's instruction, the Trustee then retained an experienced and well-known liquidation agent, Duff & Phelps Corporation ("**Duff**"), to advise and assist with the Proposed Auction. *See* A-48 (Am. Compl. ¶ 160). After receiving limited information from Patriarch VIII, the former Zohar I collateral manager, Duff completed its analysis of the collateral and recommended procedures for the Proposed Auction. *See* Rakoff Opinion (as defined below) at 4. The Trustee then moved forward with the Proposed Auction on August 26, 2016, publishing a Notice of Public Sale and Invitation to Bid, which was scheduled for September 15, 2016. *See* A-47 (Am. Compl. ¶ 156).

7

On September 12, 2016, Patriarch XV and Octaluna, LLC ("**Octaluna**"), holder of the Class A-3 Notes issued by Zohar I and the Zohar I Preference Shares, respectively, filed a Complaint in New York Supreme Court against the Trustee and others, alleging *inter alia* (i) breach of fiduciary duty for organizing a collateral sale inconsistent with the terms of the Zohar I Indenture, (ii) a violation of UCC § 9-610 for organizing a "commercially unreasonable" auction, and (iii) two breaches of contract claims for the same. A-47 (Am. Compl. ¶ 156); *Patriarch Partners XV, LLC et al. v. U.S. Bank Nat'l Ass'n et al.*, Index No. 654819/2016, Dkt. No. 1 (Sup. Ct. N.Y. Cnty. Sept. 12, 2016). An Order to Show Cause was filed the same day seeking to preliminarily enjoin the Proposed Auction. *Id.* at Dkt. No. 2. After the Trustee removed the case to the U.S. District Court for the Southern District of New York, a temporary restraining order ("**TRO**") was entered on September 14, 2016, briefly pausing the Proposed Auction and allowing certain discovery to proceed. A-47–48 (Am. Compl. ¶¶ 157–59); *see Patriarch Partners XV, LLC et al. v. U.S. Bank Nat'l Ass'n et al.*, No. 16 Civ. 7128, Minute Entry Sept. 14, 2016 (S.D.N.Y. Sept. 13, 2016) (Rakoff, J.) (the "**Rakoff Litigation**").

After extensive briefing and comprehensive expedited discovery, the court held an evidentiary hearing in which it admitted 85 exhibits and heard testimony from seven witnesses about the commercial reasonableness of the Proposed Action. *See* Rakoff Litigation, Dkt. No. 61-1, 68. The court heard testimony from Ms. Tilton;

MBIA's Chief Financial Officer, Anthony McKiernan; the plaintiffs' expert witnesses John Reohr and Steven Schwarz; Scott DeRoss, of U.S. Bank; James Finkel, a managing director at Duff; and Robert Major, defendants' expert witness. *See* Rakoff Litigation, Dkt. No. 68. After considering the briefing and evidence, Judge Rakoff found that the plaintiffs' objections to the terms of the Proposed Auction largely had *no merit*. A-47–48 (Am. Compl. ¶ 159); *see* Rakoff Litigation Dkt. No. 76 at 1–2. Consequently, on October 18, 2016, Judge Rakoff lifted the TRO and ordered the Proposed Auction to proceed on the following terms:

- The Trustee [had to] re-notice the Proposed Auction on Monday, October 24, 2016. The notice of the Proposed Auction [was required to] be prominent and distributed to a reasonably wide group of prospective bidders;

- The Proposed Auction [had to] remain open until at least November 23, 2016;

- Ms. Tilton was required to allow prospective bidders to meet and confer with the management of the Portfolio Companies, subject to an appropriate confidentiality order with each such prospective bidder;

- The Proposed Auction [had to] permit bidding from all persons or entities that qualif[ied] for a private placement exemption from registration under the Securities Act of 1933;

- The Proposed Action [had to] allow bids either for one or more items of the Zohar I collateral or for all of the Collateral; and

- The Proposed Action [had to] include Item 133 on the list of the Zohar I collateral listed in the Invitation to Bid among the assets offered for sale.

*Id.* at 2 (emphasis added). Judge Rakoff denied injunctive relief in all other respects. *See id.*

Following Judge Rakoff's ruling, the Trustee published the Second Notice of Public Sale and Invitation to Bid, noticing the Proposed Auction for November 29, 2016. A-48 (Am. Compl. ¶ 160). But after the Trustee received new, material information regarding certain Zohar I collateral on November 28, 2016, it decided to postpone the Proposed Auction.[6] *Id.* Then, on December 2, 2016, the Trustee published the Third Notice of Public Sale and Invitation to Bid, noticing the Proposed Auction for December 9, 2016. *Id.* Again, on that same day, the Trustee received additional information regarding the Zohar I collateral, and Patriarch XV requested a telephonic conference before Judge Rakoff to further postpone the Proposed Auction. *Id.* On December 7, 2016, Judge Rakoff extended the date of the Proposed Auction to December 21, 2016. Rakoff Litigation at Dkt. No. 79.

The auction (the "**Auction**") occurred on December 21, 2016, and MBIA was declared the winning bidder. MBIA's bid included a credit bid of $148,951,585 of its credit enhancement liabilities and cash, and after the Auction, $9,627,771 of

---

[6] The reason the Trustee received this information at this time was that the court in *Zohar CDO 2003-1, LLC, et al. v. Patriarch Partners, LLC et al.* found (after a two-day trial) that Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC and Patriarch Partners XV, LLC breached their contractual obligations to provide certain books of accounts to Debtors under the Collateral Management Agreements by which Patriarch acted as the original Collateral Manager for the Debtors. No. 12247-VCS, 2016 Del. Ch. LEXIS 162, at *1–4 (Del. Ch. Oct. 26, 2016). The court ordered these Patriarch entities to produce certain documents to Debtors and the then-current Collateral Manager AMZM. *See id.* at *38–64.

MBIA's credit enhancement liabilities remained outstanding. *See In re Zohar III, Corp.*, Case No. 18-10512 (KNO), D.I. 506-1 (Bankr. Del.). The Trustee received a $25,000 one-time fee in association with this liquidation, in addition to its normal accrued Trustee fee. *See* A-305 (Indentures § 5.17(a)).

On August 28, 2017, Judge Rakoff issued a memorandum decision buttressing his denial of the October preliminary injunction, in which he emphasized the commercially reasonable nature of every aspect of the Auction, including the timing, bidder eligibility, bid structure, and the specific Zohar I collateral to be liquidated. *See Patriarch v. United States Bank Nat'l Ass'n*, No. 16 Civ. 7128 (JSR), 2017 U.S. Dist. LEXIS 145365 (S.D.N.Y. Aug. 25, 2017) (the "**Rakoff Opinion**").[7]

Specifically, Judge Rakoff held that the only issues regarding commercial reasonableness were limited to (i) the length of time the Auction would remain open for bidding and (ii) inclusion of "Other Collateral" (termed "Item 133") as Collateral in the Auction, which Judge Rakoff required in his October 2016 Order. *Id.* at *13–14. But Judge Rakoff concluded that, first, a bidding period of 30 days following re-noticing of the Auction to a reasonably wide group of prospective bidders would

---

[7] The Bankruptcy Court properly took judicial notice of the Rakoff Litigation, including the docket, pleadings and the Rakoff Opinion. "A court may take judicial notice of other courts' proceedings 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Mocco v. Frumento*, 710 F. App'x 535, 541 n.7 (3d Cir. 2017) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

provide for a commercially reasonable time for the bidders to evaluate the collateral (*id.* at *16), and, second, Item 133 was explicitly within the scope of the "Collateral" defined in Section 1.1 of the Zohar I Indenture, as well as the language of the Zohar I Indenture's Granting clause, and thus had no reason to be excluded from the Auction. *Id.* at *20–21. "In sum, neither of plaintiffs' two outstanding objections demonstrated the commercial unreasonableness of the modified terms of the Auction that incorporated the 30-day bidding period supplied by the Court." *Id.* at *21.

### C.    The SDNY Litigation

On November 27, 2017, Appellants filed a Third-Party Complaint against the Trustee and others in *Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, Case No. 17 Civ. 307 (PKC) (the "**SDNY Litigation**"). In the SDNY Litigation, Appellants alleged that the Trustee breached its contractual and fiduciary duties when it commenced a "commercially unreasonable" Zohar I Auction and brought claims for, *inter alia*, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. On September 29, 2021, Judge Castel dismissed as meritless all of the Patriarch Parties' allegations relating to the Zohar I Auction, including the allegation that the auction was "commercially unreasonable." *See Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, No. 17 Civ. 307 (PKC), 2021 U.S. Dist. LEXIS 187081, at *39–44, 46–47 (S.D.N.Y. Sep. 29, 2021). Judge Castel held that the Zohar I Auction was

conducted pursuant to a "judicial proceeding" under the oversight of the Honorable Jed S. Rakoff, and that such proceeding and resulting court order "foreclose [the] Patriarch Parties' attack on the commercial reasonableness of the auction . . . ." *Id.* at *41.

## PROCEDURAL HISTORY

On October 1, 2019, Appellants filed their equitable subordination complaint seeking to subordinate the Trustee's claims and liens against all three Debtors—held for the benefit of all the Debtors' noteholders—to Appellants' own debt and equity claims. The Trustee moved to dismiss Appellants' Complaint on October 30, 2020.[8]

After full briefing and argument, on March 25, 2022, the Bankruptcy Court issued a Memorandum Opinion and Order dismissing the operative Amended Complaint in its entirety with prejudice (the "Order"). A-75. With regard to Appellants' claim against the Trustee, the Bankruptcy Court held that Appellants "failed to allege sufficient facts from which the Court can infer that [the Trustee] acted inequitably." A-96. As a threshold matter, the Bankruptcy Court found that the Trustee was a non-insider at the time of the alleged wrongful conduct. A-91–92. The Bankruptcy Court notably found that Appellants failed to show how the Trustee

---

[8] Appellants amended their complaint on January 6, 2022. A-1. ("**Am. Compl.**"). Because the Amended Complaint did not substantially alter the allegations against the Trustee, the Bankruptcy Court permitted the Trustee to rely on its previously filed, fully briefed motion to dismiss to support its request for dismissal of the Amended Complaint. *See* A-79 n.12.

"possessed the necessary day-to-day control over the Zohar Funds, let alone a relationship with them beyond that of its role as indenture trustee for their noteholders," especially as MBIA's contractual right to direct the Trustee to conduct the Zohar Auction undermined Appellants' contention that the Trustee "controlled or had an inappropriate relationship with the Zohar Funds." A-92.

Because Appellants failed to allege that the Trustee was an insider at the time of the alleged wrongful conduct, the Bankruptcy Court applied a heightened standard in analyzing whether the Trustee engaged in inequitable conduct and found Appellants' allegations to be "implausible." A-93. The most significant problem, according to the Bankruptcy Court, was the fact that Appellants Patriarch XV and Octaluna "challenged [the Trustee's] conduct in real time" before Judge Rakoff. *Id.* Moreover, the Bankruptcy Court noted that Appellants had unsuccessfully pursued claims against MBIA and the Trustee arising from the Zohar I Auction in the SDNY Litigation. A-95.

As additional support for its holding, the Bankruptcy Court pointed to Appellants' acknowledgment that MBIA (and not the Trustee) "was the party entitled under the Indentures to direct the liquidation of the Zohar I assets securing its defaulted note obligations" and found that Appellants failed to allege any details of the "specific actions [the Trustee] took independent of those directed by MBIA, let alone those that were outside of its duties as indenture trustee." A-96. The

14

Bankruptcy Court also observed that Appellants failed to support their conclusory allegation that the Zohar I Auction "depressed the market value of Zohar I's assets and allowed MBIA to obtain them cheaply." *Id.* The Bankruptcy Court noted Appellants' acknowledgment that Octaluna retained, but declined to exercise, a "last look right" enabling it to purchase the auctioned assets at a price equal to or greater than MBIA's offer. *Id.* According to the Bankruptcy Court, this fact undermined Appellants' allegations that MBIA obtained a windfall from the auction. Thus, the Bankruptcy Court held that Appellants failed to allege that the Trustee engaged in inequitable conduct for purposes of their equitable subordination claim. *Id.*

## SUMMARY OF ARGUMENT

Appellants' allegations against the Trustee fall woefully short of the standard in the Third Circuit for pleading a claim for equitable subordination. For an equitable subordination claim to survive a motion to dismiss, the complaint must plausibly allege three things: (1) that the claimant engaged in some type of inequitable conduct; (2) that the misconduct resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) that equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code. *See Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.) (Schubert II)*, 554 F.3d 382, 411 (3d Cir. 2009) (adopting the three-factor equitable subordination test

formulated by the Fifth Circuit in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977)).

As the Bankruptcy Court correctly found, Appellants failed to sufficiently allege the first element of their equitable subordination claim: that the Trustee engaged in inequitable conduct. But even ignoring Appellants' failure to establish the first element, Appellants have not and cannot adequately allege the second and third elements: that the Trustee injured Appellants or conferred a benefit on itself, and that equitable subordination would be consistent with the Bankruptcy Code. Because Appellants failed to allege any—let alone all—of the predicate elements of an equitable subordination claim, this Court should affirm the Order dismissing with prejudice Appellants' equitable subordination claim against the Trustee.

## ARGUMENT

I.    **BY FAILING TO CHALLENGE THE BANKRUPTCY COURT'S DETERMINATION THAT THE TRUSTEE IS A NON-INSIDER, APPELLANTS CONCEDE THAT THE HEIGHTENED NON-INSIDER STANDARD FOR INEQUITABLE CONDUCT APPLIES TO THEIR CLAIM FOR EQUITABLE SUBORDINATION**

Appellants do not dispute the Bankruptcy Court's conclusion that the Trustee is a non-insider and have thus waived the argument that the Trustee is subject to heightened scrutiny. *See Williams v. LaCrosse*, 179 F. App'x 141, 141 n.1 (3d Cir. 2006) ("An argument not raised and argued in the opening brief is abandoned.");

*Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (holding that all issues must be raised and argued in the opening brief).

In analyzing an equitable subordination claim, a court must first determine whether the alleged wrongdoer "was an insider or outsider in relation to the debtor at the time of the act." *In re Mid-American Waste Sys.*, 284 B.R. 53, 69 (Bankr. D. Del. 2002). If a party is a non-insider, the plaintiff has the burden of alleging with specificity that the party is "guilty of gross misconduct tantamount to fraud, overreaching or spoliation to the detriment of others." *Id.* at 70 (citation omitted). Alternatively, if the party is an insider, the "standard for finding inequitable conduct is much lower," though the complaint still needs to show "material evidence of unfair conduct." *Id.*

Here, the Bankruptcy Court correctly determined that the Trustee is a non-insider because, among other reasons, Appellants (i) failed to allege that the Trustee "possessed the necessary day-to-day control over the Zohar Funds, let alone a relationship with them beyond that of its role as indenture trustee for their noteholders" (A-91–92); (ii) alleged that MBIA, and not the Trustee, had a controlling relationship with the Zohar Funds (A-92); and (iii) failed to show that the Trustee's access to confidential and proprietary information of the Zohar Funds and the Portfolio Companies was sufficient to establish the Trustee's insider status

17

(A-92). Therefore, Appellants admit that they have the burden of alleging—with specificity—that the Trustee was guilty of gross misconduct.

## II.  THE JUDICIALLY SUPERVISED AUCTION UNDERLYING APPELLANTS' CLAIM AGAINST THE TRUSTEE DOES NOT CONSTITUTE INEQUITABLE CONDUCT UNDER EITHER THE INSIDER OR THE NON-INSIDER STANDARD

As the Bankruptcy Court properly held, Appellants' equitable subordination claim fails because there was no plausible allegation of inequitable conduct by the Trustee.

Courts recognize three categories of "unfair conduct" that may constitute "inequitable conduct" under the *Mobile Steel* test: "(i) fraud, illegality, or breach of fiduciary duties; (ii) undercapitalization; and (iii) a claimant's use of the debtor as a mere instrumentality or alter ego." *Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.)*, 290 B.R. 514, 524 (Bankr. D. Del. 2003). Conduct that could be attributable "to 'negligence' or 'gross negligence,' is not enough; instead, there must exist "willful" or "substantial" and "intentional misconduct." *See Bank of N.Y. Mellon Trust Co., N.A. v. Miller* (*In re Franklin Bank Corp.*), 526 B.R. 527, 534 (Bankr. D. Del. 2014). "Misconduct is a prerequisite and determined on a case-by-case basis *and conduct that shocks the conscience of the court is required*." *In re Comprehensive Power, Inc.*, 578 B.R. 14, 23 (Bankr. D. Mass. 2017) (emphasis added) (citation omitted).

18

**A.    Appellants Do Not Dispute Multiple, Independent Grounds Supporting The Bankruptcy Court's Finding That The Trustee Did Not Engage In Inequitable Conduct**

In finding that Appellants failed to allege the Trustee engaged in inequitable conduct, the Bankruptcy Court identified "numerous problems" that rendered Appellants' allegations against the Trustee "implausible." A-93. Those problems include:

(i)    Patriarch XV, Octaluna, and Ms. Tilton challenged the Trustee's conduct in real time before Judge Rakoff, who oversaw the Zohar I Auction, and Appellants failed to allege that the Trustee engaged in any conduct inconsistent with Judge Rakoff's orders, A-93–95;

(ii)    After Judge Rakoff approved the Zohar I Auction, Appellants litigated the propriety of the Zohar I Auction before Judge Castel, who held on a motion to dismiss that there was no merit to Appellants' claims that the Zohar I Auction was commercially unreasonable, A-95;

(iii)    MBIA (and not the Trustee) was the party entitled under the Indentures to direct the liquidation of the Zohar I assets securing its defaulted note obligations, and Appellants offered no details of the specific actions the Trustee took independent of those directed by MBIA, let alone those that were outside of its duties as indenture trustee, A-95–96;

(iv)    Appellants failed to allege any details supporting their conclusion that the Zohar I Auction depressed the market value of Zohar I's assets and allowed MBIA to obtain them cheaply, A-96;

(v)    Appellants' acknowledgment that Octaluna I declined to exercise its "last look right" to purchase the auctioned assets at a price equal to or greater than MBIA's offer undermined the reasonableness of its allegation that MBIA secured the assets at a "fire-sale price," A-96; and

(vi)    Appellants' failed to attribute to the Trustee the alleged failure of Duff, the liquidating agent selected by MBIA to facilitate the auction, to properly notice the Zohar I Auction when rescheduled by Judge Rakoff, A-95.

Appellants do not address or dispute four of the six problems identified by the Bankruptcy Court: (ii) that Judge Castel reviewed the Zohar I Auction and found it to be commercially reasonable; (iii) that Appellants failed to offer any details of any specific actions the Trustee took independent of those directed by MBIA or outside of the Trustee's duties as indenture trustee; (iv) that Appellants failed to allege any facts supporting their conclusion that the Zohar I Auction depressed the market value of Zohar I's assets (for example, facts such as Appellants' view of the assets' purported worth, or the identity of any parties that were unable to participate in the auction due to the Trustee's alleged wrongdoing); and (vi) that Appellants failed to attribute to the Trustee Duff's alleged failure to properly notice the Zohar I Auction. *See generally* Open. Br. (ignoring the foregoing issues).

Each of these issues alone is sufficient to support the affirmance of the Bankruptcy Court's finding that the Trustee did not engage in inequitable conduct— together they foreclose Appellants' appeal. And, as with Appellants' failure to challenge the Bankruptcy's Courts determination that the Trustee is a non-insider, by failing to challenge these findings in their Opening Brief, Appellants waived them on appeal. *See Williams*, 179 F. App'x at 141 n.1 ("An argument not raised and argued in the opening brief is abandoned."); *Kost*, 1 F.3d at 182 (same); *Ciry of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, No. 21-398 (LPS), 2022 U.S. Dist. LEXIS 56114, at *16-17 (D. Del. Mar. 28, 2022) (same). Thus,

20

irrespective of Appellants' other arguments, this Court can affirm the Bankruptcy Court's Order on these uncontested grounds alone.[9]

## B. Appellants Fail To Identify Any Error In The Bankruptcy Court's Order Regarding The Zohar I Auction

Neither of the two arguments Appellants raise on appeal is persuasive, let alone outcome determinative. *First*, as the Bankruptcy Court correctly held, there is no merit to Appellants' contention that, notwithstanding the Trustee's compliance with Judge Rakoff's orders, the Trustee's efforts to conduct the auction on allegedly "blatantly unfair terms" alone constitutes inequitable conduct. *Second*, the "reasoning and motivation" behind the decision by Octaluna I not to exercise its "last look right" is irrelevant to the Bankruptcy Court's holding because it is undisputed that Octaluna I did not exercise these rights.

---

[9] Appellants' briefing before the Bankruptcy Court and on appeal also ignores the Trustee's argument that it would be inappropriate to subordinate the Trustee's claims against Zohar II and Zohar III because Appellants do not challenge the Trustee's conduct with respect to Zohar II and Zohar III. *See* A-96 ("US Bank also highlights, and the Plaintiffs do not contest, that none of US Bank's alleged conduct relates to Zohar II and Zohar III and there, it would be inappropriate to subordinate its claims asserted against them."). After all, fundamental principles of corporate separateness dictate that a court cannot impute conduct as to one Debtor to subordinate claims as to other Debtors, and equitable subordination must be based on the claimant's specific acts. *See Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.)*, Adv. No. 10-50514, 2010 Bankr. LEXIS 2720, at *30 (Bankr. D. Del. Sept. 1, 2010); *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 258 (Bankr. D. Del. 2018) (stating that "the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness . . . .").

### 1.   The Zohar I Auction Was Commercially Reasonable

No amount of artful pleading can escape the fact that the Zohar I Auction was, in fact, directed by Judge Rakoff and conducted through a process that three federal judges—Judge Rakoff, Judge Castel, and Judge Owens—found to be commercially reasonable. Indeed, Appellants made these *exact same allegations* of commercial unreasonableness before Judge Rakoff when they sought a preliminary injunction to halt the Proposed Auction in October 2016. Judge Rakoff found *every* aspect of the Auction to be commercially reasonable, including the timing, bidder eligibility, bid structure, and the specific Zohar I collateral to be liquidated. Rakoff Opinion at *14-21.

Judge Rakoff also held that Patriarch XV and Octaluna failed to show that a 30-day period for evaluating the "Other Collateral" would be insufficient, nor was it commercially unreasonable to include "Other Collateral" (Item 133) in the Auction as it was explicitly within the scope of the "Collateral" defined in the Section 1.1 Zohar I Indenture, as well as the language of the Zohar I Indenture's Granting clause. *Id.* at *20–21. "In sum . . . neither of plaintiffs' two outstanding objections demonstrated the commercial unreasonableness of the modified terms of the Auction that incorporate the 30-day bidding period supplied by the Court." *Id.* at *21.

While a few of the terms of the Auction were updated in an effort to forestall additional litigation with Appellants, Judge Rakoff reviewed and signed off on every

aspect of the auction, and the Appellants fail to even identify what purported "original" terms give rise to a theory of inequitable conduct. *See* Rakoff Opinion at *21. In fact, despite Judge Rakoff detailed rulings, the extensive discovery regarding the Auction exchanged between the parties, and all of the testimony and evidence presented at the hearing (all of which this Court can take judicial notice of), Appellants merely repeat their unsubstantiated, unreasonable, and conclusory allegations that the Auction was conducted by the Trustee in a commercially unreasonable manner.

This is insufficient. As the Bankruptcy Court highlighted, Appellants do not dispute that MBIA—not the Trustee—"was the party entitled under the Indentures to direct the liquidation of the Zohar I assets securing its defaulted note obligations[.]" A-96; *see also* A-46 (Am. Compl. ¶ 154) ("MBIA had the right under the Indenture to direct that the fund's collateral be liquidated to recoup its insurance payment"). And, Appellants failed to allege any details about the "specific actions [the Trustee] took independent of those directed by MBIA, let alone those that were outside of its duties as indenture trustee." *Id.* As noted above, Appellants do not even respond to this point. This alone should be dispositive on whether Appellants sufficiently alleged that the Trustee acted inequitably. *See, e.g.*, *Waslow v. MNC Commercial Corp. (In re Paolella)*, 161 B.R. 107, 120 (Bankr. E.D. Pa. 1993) ("Generally, a creditor does not act inequitably in exercising its contractual rights.").

23

Indeed, conducting a UCC foreclosure sale via a public auction in good faith per the requirements of the Zohar I Indenture, at the direction of MBIA, and with oversight of Judge Rakoff is not "inequitable conduct." *See In re Mid-American Waste Sys.*, 284 B.R. at 70 (noting if a party is a non-insider, Plaintiffs have the burden of alleging with specificity that the party is "guilty of gross misconduct tantamount to fraud, over-reaching or spoliation to the detriment of others.") (citing *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 71 (9th Cir. 1991)). But even if one accepts as true Appellants' assertions that the Zohar I Auction as originally planned was commercially unreasonable, Appellants have still not—as they must—explained with specificity how the Trustee's actions give rise to gross misconduct tantamount to fraud. *See In re Comprehensive Power, Inc.*, 578 B.R. at 23.

The conclusory allegations that comprise Appellants' equitable subordination claim do not even approach this Circuit's standard for pleading a plausible claim of this nature, especially under the heightened standard for non-insiders such as the Trustee.

> **2.**    **Appellants' Acknowledgement That Octaluna Failed to Exercise Its Last Look Rights Undermines Appellants' Allegation That the Zohar I Auction Depressed The Price of The Collateral**

Appellants have repeatedly acknowledged that Octaluna failed to exercise its contractual "last look" rights, or the right to purchase the collateral "at a price equal

24

to or more favorable to the Issuer than the price" offered by the winning bidder. A-49, *see also* Zohar I Indenture § 5.4(a)(v)(A). While the Bankruptcy Court correctly held that this failure undercuts Appellants' argument that the structure of the Zohar I Auction depressed the value of the Collateral, Appellants now argue that in so holding the Court improperly determined the "reasoning and motivation behind Ms. Tilton's decision not to exercise" her last look rights, as such reasoning and motivation was an issue of fact that cannot be determined on a motion to dismiss. A-49.

However, Ms. Tilton's reasoning and motivation is irrelevant to the Bankruptcy Court's finding that the Zohar I Auction was commercially reasonable. Appellants had a bargained for contractual right to participate in the Auction and purchase the collateral on the same terms as the highest bid. It is undisputed that Appellants did not exercise this contractual right. Appellants' new arguments regarding the reasons why they did not exercise their contractual right (which are not alleged in the Amended Complaint) are irrelevant to the Bankruptcy Court's determination.

As the Bankruptcy Court highlighted, Appellants wholly failed to allege facts regarding their view of the assets' purported worth, or the identity of any parties that were unable to participate in the auction due to the Trustee's alleged wrongdoing. A-96. Value is what someone is willing to pay, and it is undisputed that Ms. Tilton

was not willing to pay more than the ultimate sale price of the Collateral—a price that was determined through the commercially reasonable Zohar I Auction. *See Baron v. Pressed Metals of America, Inc.*, 123 A.2d 848, 854 (Del. 1956) (noting that the "best price" a corporation could hope to obtain for the sale of a corporate asset "was what someone would be willing to pay" for it). And, in any event, resolution of the question of the motivation behind *Octaluna's* decision not to exercise the "last look rights" is not outcome determinative to the issue at hand— whether the *Trustee* engaged in any inequitable conduct that would rise to gross misconduct.

* * *

The Bankruptcy Court properly found that Appellants failed to allege that the Trustee engaged in inequitable conduct. Accordingly, this Court should affirm the Bankruptcy Court's Order dismissing with prejudice Appellants' equitable subordination claim against the Trustee.

**III.    THE BANKRUPTCY COURT'S ORDER MAY BE AFFIRMED ON TWO ADDITIONAL GROUNDS: THAT APPELLANTS FAILED TO PLAUSIBLY ALLEGE EITHER THE SECOND OR THIRD ELEMENTS OF AN EQUITABLE SUBORDINATION CLAIM**

The Trustee's motion to dismiss raised several additional grounds for dismissal of the Amended Complaint that the Bankruptcy Court did not reach— namely, that Appellants failed to adequately allege the second and third elements of their claim for equitable subordination. Those additional grounds are supported by

26

the record on appeal, and this Court may rely upon them to affirm the Order. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) ("We may affirm the District Court on any grounds supported by the record."); *see also Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 761 n .1 (3d Cir. 2004) ("An appellate court may affirm a result reached by the district court for reasons that differ from the conclusions of the district court if the record supports the judgment.").

### A.    Appellants Failed To Allege That The Trustee's Conduct Injured Them Or Conferred An Unfair Advantage On The Trustee

Even if Appellants had sufficiently alleged that the Trustee engaged in inequitable conduct, Appellants failed to allege the second element of its claim: that the Trustee's actions injured them or conferred an unfair advantage on the Trustee. Appellants' general allegations of injury fail to allege that the Trustee's purported inequitable conduct regarding the Zohar I Auction resulted in injury to Appellants. *See* A-70–71 (Am. Compl. ¶ 223–27).

*First*, Appellants' "last look" right (*see supra* Section II(A)(2)) undermines any claim of harm. Indeed, Appellants conveniently omitted from their Amended Complaint any discussion of the "last look" provisions of the Indentures, let alone the fact that Appellants elected not to submit a bid in the Auction, as they were permitted to do. *See* A-298–99 (Indenture § 5.4(a)(v)(A)); Rakoff Opinion at *3–4 (noting that the Indenture provided that "any holder of a Class B Note could arrange to purchase the available Collateral at a price equal to or greater than the offer

27

price"). Having been afforded the right to participate in the Auction Appellants' claims of injury are without merit.

*Second*, Appellants' conclusory allegations that the Trustee's fees for the Auction conveyed an unfair advantage are similarly meritless. *See* A-70 (Am. Compl. ¶ 221). The fixed amount of fees ($25,000) that the Trustee received from Zohar I was not connected to the result of the Zohar I Auction; the fees would have been the same regardless of who was the winning bidder. In other words, even if it is true (which it is not) that the Trustee "colluded" with MBIA to conduct a "sham" auction, such actions would have resulted in no benefit or advantage to the Trustee.

### B.    Equitable Subordination Is Inconsistent With The Provisions Of The Bankruptcy Code

Finally, this Court can affirm the Bankruptcy Court's Order because Appellants' equitable subordination claim is inconsistent with the provisions of the Bankruptcy Code, the Bankruptcy Court's own orders, and general notions of equity. Consequently, Appellants cannot satisfy the third element of their claim.

Appellants' attempt to invert the priority of payments set forth in the Indentures should be foreclosed by their acknowledgement in the Debtors' bankruptcy that the Indentures remain controlling, as well as their affirmance in the Settlement Agreement that the Indentures' Priority of Payments waterfall would continue to govern. Indeed, Ms. Tilton has made sworn statements to the Bankruptcy Court expressly acknowledging the subordination provisions of the Indentures. *See*

28

Tilton Decl. ¶¶ 40–41 (the "Zohar Funds' governing documents established *a waterfall* through which Portfolio Company sales proceeds (as well as interest and principal payments made to the Zohar Funds) flow. . . . *Only after the Noteholders are paid in full do the residual proceeds inure to me*. . . ."); ("The Class A subclasses have an interclass priority waterfall. . . . The Class B Notes are all held by Octaluna Entities (and therefore indirectly by me) and, while also secured, *are subordinated in right of payment to the Class A Notes*."); *id.* ¶ 94–95 (same); *id.* ¶ 106 ("But if Zohar I matured, *my interests would be subordinated to MBIA's, as the Class A-3 Notes are subordinated to the Class A-1 and Class A-2 Notes*.") (emphasis added).

Moreover, in the Bankruptcy Court-approved Settlement Agreement, all Patriarch Stakeholders (as defined therein) explicitly recognized the terms of the Indentures' waterfall or "Priority of Payments," whereby senior creditors—MBIA and the Zohar III Controlling Class (and the Trustee to the extent of its fees and expenses and other claims)—would be paid ahead of any of the Patriarch Stakeholders. Appellants' collateral attack on the Settlement Agreement is therefore fundamentally inconsistent with the provisions of the Bankruptcy Code and this Court's prior orders. *See Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) ("A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim

inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate.").

## **CONCLUSION**

The Trustee respectfully requests that this Court affirm the Bankruptcy Court's Order dismissing with prejudice Appellants' equitable subordination claim against the Trustee.

Dated: June 15, 2022

By: */s/ John W. Weiss*

John W. Weiss (No. 4160)
**PASHMAN STEIN**
**WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Ste 4202
Holmdel, New Jersey 07733
(201) 373-2071
JWeiss@pashmanstein.com

Alexander S. Lorenzo
(*pro hac vice admission pending*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016-1387
(212) 210-9400
Alexander.Lorenzo@alston.com

*Attorneys for U.S. Bank National*
*Association, solely in its capacity as Trustee*
*under the Indentures*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1. This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 7,488 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

Dated: June 15, 2022                                    */s/ John W. Weiss*
                                                                        John W. Weiss

31