## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Zohar III, Corp., *et al.*,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered |
| LYNN TILTON, *et al.*,<br><br>     Appellants,<br><br>  v.<br><br>MBIA INC., *et al.*,<br><br>     Appellees. | Case No. 1:22-cv-00400 (TLA) |

## ANSWERING BRIEF OF APPELLEES
## MBIA INC. AND MBIA INSURANCE CORPORATION

PACHULSKI STANG ZIEHL & JONES, LLP
919 N. Market Street
P.O. Box 8705
Wilmington, Delaware 19899

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281

*Attorneys for Defendants-Appellees
MBIA Insurance Corporation and MBIA
Inc.*

---

[1] The Debtors, and, where applicable, the last four digits of each of their respective taxpayer identification numbers, are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 8012 of the Federal Rules of Bankruptcy Procedure:

1.      Appellee MBIA Insurance Corporation, a private non-governmental corporate party, respectfully states that its corporate parent is Appellee MBIA Inc.

2.      Appellee MBIA Inc., a publicly-held non-governmental corporate party whose shares are traded on the New York Stock Exchange, respectfully states that no publicly-held corporation owns more than 10% of the shares of MBIA Inc.

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT ........................................................................1

TABLE OF AUTHORITIES ............................................................................................... ii

SUMMARY OF ARGUMENT ............................................................................................2

STATEMENT OF THE CASE..............................................................................................5

    A.     The Zohar Funds, The Parties And Transaction Documents...................................6

    B.     The Parties' Restructuring Negotiations And Communications With The SEC .......................................................................................................................8

    C.     Zohar I's Payment Default And Patriarch's Voluntary Resignation ....................10

    D.     The Zohar I Foreclosure Auction...........................................................................12

    E.     The Parties' Additional Related Zohar Litigations And The SDNY Opinion .................................................................................................................13

    F.     The Delaware Bankruptcy Cases And This Equitable Subordination Action...................................................................................................................16

ARGUMENT ......................................................................................................................18

I.     THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON MBIA'S AND PATRIARCH'S RESTRUCTURING NEGOTIATIONS ........................................................................................................19

II.     THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON MBIA'S COMMUNICATIONS WITH THE SEC ....................................23

III.     JUDGE CASTEL'S OPINION BARS RELITIGATION OF CLAIMS BASED ON PATRIARCH'S RESIGNATION AND AMZM'S MERITORIOUS LITIGATION..........................................................................................................26

IV.     THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON THE ZOHAR I COURT-APPROVED FORECLOSURE AUCTION .......30

CONCLUSION...................................................................................................................31

CERTIFICATE OF COMPLIANCE ...................................................................................1

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES:</u>

*16630 v. Southfield L.P. v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................18, 22

*Bagic v. Univ. of Pittsburgh,*
  773 F. App'x 84 (3d Cir. 2019) ...........................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................18

*Charal Inv.  Co. v. Rockefeller*
  *(In re Rockefeller Ctr. Properties, Inc. Sec. Litig.),*
  311 F.3d 198 (3d Cir. 2002) ...........................................................24, 25

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
  822 F.2d 1242 (2d Cir. 1987) ...............................................................24

*Host Int'l, Inc. v. MarketPlace, PHL, LLC,*
  32 F.4th 242 (3d Cir. 2022) .............................................................19, 22

*In re Lynn Tilton*, Initial Decision SEC Exchange Act Release,
  No. 1182, 2017 WL 4297256 (ALJ Sept. 27, 2017) .............................9

*Krasner v. Rahfco Funds LP,*
  No. 11 CV 4092 VB, 2012 WL 4069300 (S.D.N.Y. Aug. 9, 2012) .................24

*LaMonica v. Tilton (In re Transcare),*
  Adv. Pro. No. 18-01021, 2020 WL 8021060
  (Bankr. S.D.N.Y. July 6, 2020) (unpublished)......................................3

*Oran v. Stafford,*
  226 F.3d 275 (3d Cir. 2000) .................................................................25

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.,*
  710 F. Supp. 2d 458 (D. Del. 2010)......................................................19

*Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n,*
    No. 16-cv-07128, 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017) ...............12, 30

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) .................................................................6

*Tender Touch Rehab. Servs., LLC v. Brighten at Bryn Mawr,*
    No. CIV. A. 11-7016, 2012 WL 993532 (E.D. Pa. Mar. 23, 2012) ..................24

*United States ex rel. Marsteller v. Tilton,*
    No. 5:13-cv-00830-AKK (N.D. Ala. 2015)...........................................................4

*Youngman v. Yucaipa Am. Alliance Fund I, L.P. (In re Ashinc Corp.),*
    629 B.R. 154 (Bankr. D. Del. 2021) ............................................................. 28-29

*Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC,*
    No. CA-12247, 2016 WL 6248461-VCS (Del. Ch. Oct. 26, 2016), *aff'd,*
    165A.3d 288 (Del. 2017) ......................................................................................3

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC,*
    620 B.R. 456 (S.D.N.Y. 2020) ............................................................................29

*Zohar CDO 2003-1, Ltd v. Patriarch Partners, LLC (In re Zohar III, Corp.),*
    631 B.R. 133 (Bankr. D. Del. June 18, 2021) ....................................................14

*Zohar CDO 2003-1 v. Patriarch Partners, LLC,*
    No. 17-cv-0307 (PKC), 2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021)........4, 29

## STATUTES & OTHER AUTHORITIES:

Fed. R. Bankr. P. 8014(e) .................................................................28, 31

Defendants-Appellees MBIA Inc. and MBIA Insurance Corporation ("MBIA" and, together with MBIA Inc., collectively, the "MBIA Defendants") respectfully submit this answering brief in response to the *Opening Brief of Appellants* (ECF 30) (the "Opening Brief") filed by Patriarch in connection with their above-captioned appeal of the *Memorandum Opinion and Order on Defendants' Motions to Dismiss the Amended Complaint of Lynn Tilton and the Patriarch & Octaluna Entities for Equitable Subordination* issued by United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 25, 2022 (A-74 *et seq.*) (the "Order").[2]  In support of this answering brief, the MBIA Defendants respectfully state as follows:

## SUMMARY OF ARGUMENT

The Bankruptcy Court's Order dismissing Patriarch's Equitable Subordination Complaint for failure to state a plausible claim for equitable subordination under 11 U.S.C. § 510(c)(1) is based on well-established law and a careful analysis of the factual allegations.  It should be affirmed.

Patriarch's Opening Brief fails to identify any material errors of fact or law in the Order or the Bankruptcy Court's underlying analysis.  Replete with empty rhetoric regarding imaginary factual disputes and unreasonable inferences, Patriarch's appeal fails to identify facts alleged in the Complaint that would shore

---

[2]   The term "Patriarch" refers collectively to Plaintiffs-Appellants Lynn Tilton and her fellow plaintiff affiliates.  (A-9–11).  Citations to the Appendix, as filed by Patriarch at ECF 31 and supplemented by Appellees herewith, are referred to as "A-###."  Except where otherwise indicated, citations to "ECF" refer to docket filings in this appeal pending in the United States District Court for the District of Delaware at Case No. 22-cv-00400.  Citations to "Adv. D.I." refer to docket filings in the adversary proceeding now subject to appeal and formerly pending in the Bankruptcy Court at Case No. 19-ap-50390.  Capitalized terms not defined herein shall have the meanings ascribed to them in the Order.

up any of the pleading deficiencies described in the Bankruptcy Court's Order.  Nor does Patriarch identify applicable legal authority demonstrating that any aspect of the Order was erroneous or that would compel a different outcome for this case. Rather than state meritorious grounds for appeal, the Opening Brief makes clear that this proceeding is merely Patriarch's most recent gambit in a years-long effort to avoid or delay accountability for destroying the value of the Zohar CLO assets.

This Court is but the latest of a long-line of authorities tasked with adjudicating Patriarch's conduct, claims, and defenses relating to the Zohar Funds. As just a few examples:

- In *Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*, No. CA-12247, 2016 WL 6248461-VCS (Del. Ch. Oct. 26, 2016), *aff'd*, 165A.3d 288 (Del. 2017) Patriarch claimed that it had no duty to provide the successor collateral manager with evidence of the Funds' equity interests in the Zohar portfolio companies.  Vice Chancellor Slights, however, found Tilton to be an incredible witness and her claims of ownership of portfolio company equity "codswallop."  *Id.* at *14 n.128.

- The same court also held in a different case that the Funds were indeed the beneficial owners of equity in certain corporate portfolio companies and that Tilton and Patriarch had improperly encumbered that equity with self-dealing voting proxies.

- Similarly, in *LaMonica v. Tilton* (*In re Transcare*), Adv. Pro. No. 18-01021, 2020 WL 8021060 (Bankr. S.D.N.Y. July 6, 2020), the Honorable Stuart M. Bernstein found that Tilton attempted to enrich herself at the expense of one of the Zohar portfolio companies in breach of her fiduciary duties of loyalty and good faith.  Tilton had fraudulently transferred the valuable assets of an ambulance and emergency services provider called Transcare Corp. to herself through her Patriarch affiliates, while saddling other creditors with the corporate liabilities and costs.  On appeal, the District Court affirmed Judge Bernstein's findings and confirmed a damages award against Patriarch for $38.1 million.

- In *United States ex rel. Marsteller v. Tilton*, No. 5:13-cv-00830-AKK (N.D. Ala. 2015) a jury in another federal court found that a Zohar portfolio company under Tilton's direct management and control was liable for potentially tens of millions in damages to *qui tam* whistleblowers for bribery and defrauding the United States government.

Further, and most relevant for present purposes, in *Zohar CDO 2003-1 v. Patriarch Partners, LLC*, No. 17-cv-0307 (PKC) (the "SDNY Action"), the Honorable P. Kevin Castel of the Southern District of New York issued Tilton an overwhelming defeat by dismissing approximately 20 different claims based on the very same alleged conduct alleged in the Equitable Subordination Complaint dismissed by the Bankruptcy Court. Judge Castel found Patriarch's flimsy, conclusory, makeweight allegations insufficient to meet even the barest plausibility standards. (A-118); *see also* 2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021).

As evidenced by the Bankruptcy Court's dismissal Order, this case is more of the same: more baseless allegations hurled against the wall. The Complaint's central, unsupported premise that the senior Zohar creditors fraudulently and concertedly abused their legal and contractual rights to steal Zohar assets merely to harm Patriarch or Tilton's concededly already junior interests is implausible and nonactionable as a matter of law. Similar to the long line of other courts that have soundly rejected Patriarch's slapdash, fantastical theories, this Court need not accept the internally inconsistent and implausible allegations of the Amended Complaint as true.

*First*, MBIA's negotiations with Patriarch from 2012 to 2015 regarding a potential note maturity extension and global restructuring were nothing more than failed, arm's-length settlement negotiations. The Bankruptcy Court correctly held

that the inference Patriarch asked it to make — that, despite sorely needing cash, MBIA hatched a scheme to pay out $1 billion in the hopes of recovering excess value through a drawn out, risky recovery process it had no ability to control — is unsupported by fact, internally inconsistent with other allegations in the Complaint, and contrary to logic and reason.

*Second*, the Complaint's allegations regarding MBIA's good-faith cooperation with the SEC are similarly flawed.  Patriarch's conspiracy-laden arguments regarding MBIA's communications with the SEC simply do not support a rational inference of inequitable conduct.

*Third*, Patriarch cannot escape the impact of Judge Castel's opinion in the SDNY Action.  The Bankruptcy Court's Order precluding relitigation of issues identical to those resolved as a matter of law by the Judge Castel should be upheld. Patriarch's attempts to avoid the application of collateral estoppel to its allegations here are unavailing as it merely draws meaningless distinctions between the two decisions by the SDNY court and the Bankruptcy Court.

*Fourth*, Patriarch's baseless attacks regarding MBIA's exercise of its contractual remedies in directing the Zohar I foreclosure auction cannot sustain Tilton's claim of inequitable conduct.

The Court should affirm the Bankruptcy Court's Order dismissing the unsupported allegations of the Complaint.

## STATEMENT OF THE CASE

The following statement of the case is based on facts alleged in the Amended Complaint for Equitable Subordination (the "<u>Complaint</u>"), the public

record, and documents that are integral to or explicitly relied upon in the Complaint, including certain Zohar transaction documents whose authenticity is not disputed.[3] (A-80 at n.22.)  Accordingly, these facts were properly considered by Bankruptcy Court and may be considered by this Court.  (*Id.* (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).)

A.    **The Zohar Funds, The Parties And Transaction Documents**

      "Zohar I," "Zohar II," and "Zohar III" (together, the "Zohar Funds") are three collateral loan obligation funds that issued notes to investors backed by a portfolio of collateral assets (the "Collateral").  (A-4–5 (¶ 3), A-18 (¶¶ 56–59.)  This Collateral portfolio consists of loans to and equity interests in a group of companies referred to as the "Portfolio Companies."  (A-4–5 (¶ 3), A-18–19 (¶ 60).)

      MBIA is the "Credit Enhancer" and the "Controlling Party" with respect to Zohar I and Zohar II.  (A-8 (¶ 11), A-19 (¶ 61).) In those capacities, MBIA issued financial guaranty insurance policies (the "Policies") which guaranteed the payment of scheduled interest and principal to the holders of senior notes issued by those Funds.  (A-12 (¶ 22), A-19 (¶¶ 61–62).)  Defendant MBIA Inc. is a publicly traded holding company and MBIA's corporate parent.  (A-12 (¶¶ 21–22).)  MBIA Inc. is not a creditor of any of the Zohar Funds and has not filed a claim in these

---

[3]   Among the Zohar transaction documents referenced herein and included in the Joint Appellees' Appendix submitted herewith are the two Indentures governing Zohar I and Zohar II, the two Collateral Management Agreements entered into between Patriarch and each of those two funds (the "CMAs"), and the Collateral Management Agreements entered into between the Zohar Funds and Patriarch's successor collateral manager, Alvarez & Marsal Zohar Management, LLC ("AMZM" and the "AMZM CMAs").  Except where indicated otherwise, cited provisions in the Indenture, CMA, or AMZM CMA with respect to Zohar I are substantively similar to that provision for Zohar II, and only one citation to the Appendix will be cited for clarity and ease of reference.

Bankruptcy Cases.  (A-101 at n.196.)  The Court dismissed the Complaint against MBIA Inc. on such grounds (A-101–02), and Patriarch has not appealed this aspect of the Order.

As the Credit Enhancer, MBIA possesses certain exclusive rights and powers under the Indentures and other "Transaction Documents" governing Zohar I and Zohar II.  (A-65 (¶ 206).)  For example, MBIA is and was at all times entitled to receive certain reports and information regarding the Collateral not available to other stakeholders.  (A-407–08 (Indentures) § 16.1.)  Further, upon a payment under the Policies, MBIA became subrogated to the insured noteholders' payment rights and, as the Credit Enhancer, the senior secured creditor with payment rights senior in priority to each class of notes, including Plaintiffs' interests.  (A-65 (¶ 207); A-410–11 (Indentures) § 16.5.)  Following such an "Event of Default," MBIA gained the right to remove Patriarch for cause as the collateral manager for Zohar I and Zohar II.  (A-1005–06, 1023 (CMAs) §§ 1.1, 5.5.)  The Indentures also expressly provide MBIA with rights to monetize the Collateral and attempt to recover any Policy payments (A-46 (¶ 154), including by directing Defendant U.S. Bank National Association, in its capacity as Indenture Trustee ("U.S. Bank"), to sell the Collateral "in any manner permitted by law."  (A-298–99, 303, 305 (Indentures) §§ 5.4, 5.13, 5.17.)  Significantly, Section 13.2(a) of the Indentures states that MBIA has no obligation or duties to any other Zohar constituents:

> [MBIA] ***shall not have any obligation or duty to any Person*** or to consider ***or take into account the interests of any Person and shall not be liable to any Person for any action taken*** by it or ***at its direction*** or any failure by it to act or to direct that an action be taken, ***without regard to***

> *whether such action or inaction benefits or adversely*
> *affects any other Secured Party*, the Credit Enhancer, the
> Issuer, *or any other Person*.

(A-401 (Indentures) § 13.2(a).)

Defendant AMZM was appointed as the Zohar Funds' collateral manager by MBIA and certain investors in Zohar III (the Defendant "Zohar III Controlling Class") in March 2016 pursuant to their rights as the Controlling Parties of each the CLOs.  (A-15 (¶ 46); A-1023 (CMAs) § 5.5.)  AMZM served as collateral manager until its termination pursuant to the bankruptcy settlement agreement described below.  (A-15 (¶ 46).)

## B.    The Parties' Restructuring Negotiations And Communications With The SEC

In 2012, Tilton determined that Zohar I was not likely to satisfy its note payment obligations by the Note Maturity Date.  (A-30–31 (¶¶ 97, 99).)  During discussions among Tilton and MBIA in 2012 and 2013 regarding a possible restructuring of Zohar I, they expressly agreed that the terms of any transaction must be set forth in writing.  (A-32 (¶ 103).)  In 2013, the parties exchanged written term sheets, but no agreement was reached.  (A-33 (¶¶ 105–07).)

From the end of 2013 to early 2015, Patriarch allegedly continued to explore a possible restructuring of the Zohar Funds and provided MBIA with certain information to facilitate further discussions, but again MBIA made no commitments and no agreement was reached.  (A-33-35 (¶¶ 108, 112-13).)  On February 17, 2015, MBIA met with Tilton and discussed multiple go-forward options for the Zohar Funds that MBIA would consider after receiving information that Tilton agreed to provide.  (A-35–36 (¶¶ 114–16, 119).)

During this same approximate time frame, the United States Securities and Exchange Commission (the "SEC") was conducting a multi-year fraud investigation and administrative enforcement proceeding against Tilton and certain of her Patriarch affiliates.  (A-40–42 (¶¶ 135–41).)  As the subsidiary of a publicly registered company and the Credit Enhancer of the Zohar Funds at the center of the SEC's investigation, MBIA communicated and cooperated with the SEC.  (A-40 (¶ 136).)  By August 2013, MBIA allegedly met with and updated the SEC on discussions with Tilton regarding a possible restructuring and Tilton's equity in the Funds and the Portfolio Companies.  (A-41 (¶ 136).)  In December 2013, MBIA's counsel at Bingham McCutchen engaged in communications with the SEC and by email memorialized MBIA's understanding that, *inter alia*, any documents it received from the SEC in the course of their discussions regarding the investigation were to be treated as confidential.  (A-41–42 (¶ 138 (quoting Adv. D.I. 170-27)).)  MBIA's counsel further stated in its email that it was MBIA's understanding that MBIA would not be precluded from exercising its rights as a result of receiving any documents and that MBIA could still commence litigation against Patriarch based on information learned therein or otherwise.  *Id.*  MBIA also requested that the SEC first apprise MBIA if it was going to inform Patriarch that it had provided the documents to MBIA.  *Id.*  Ultimately, the Administrative Law Judge presiding over the SEC's administrative enforcement proceeding determined that the SEC Enforcement Division did not prove that Patriarch violated the Investment Advisers Act of 1940 as alleged in that case.  (A-42 (¶ 141) (citing *In re Lynn Tilton*, Initial Decision SEC Exchange Act Release No. 1182, 2017 WL 4297256 (ALJ Sept. 27, 2017).)

In October 2015, in anticipation of Zohar I's November 20, 2015 Note Maturity Date and payment default, MBIA proposed terms for a possible Zohar refinancing transaction.  (A-44 (¶ 145).)  Following a Patriarch counter proposal, MBIA responded with an additional proposal stating that "as long as Patriarch is in full compliance with this [proposed] agreement" MBIA would forebear on exercising its contractual remedy to remove Patriarch as collateral manager and Tilton and Patriarch would retain any rights held with respect to Zohar Funds or Portfolio Companies, as applicable.  (A-45 (¶ 150 (quoting Adv. D.I. 170-15)).)  The parties failed to reach an agreement on any restructuring transaction.  *See* Patriarch Opening Brief at 18 (citing A-44 (¶ 146)).

## C.   Zohar I's Payment Default And Patriarch's Voluntary Resignation

On November 20, 2015, Zohar I defaulted on its note payment obligations.  (A-44 (¶ 154).)  Zohar II likewise defaulted in January 2017.  (A-65 (¶ 207).)  Following those funds' respective payment defaults, MBIA paid approximately $819 million under the Policies (A-12, A-65 (¶¶ 21, 207), making the senior insured noteholders whole and entitling MBIA to its bargained-for rights under the Transaction Documents, including those post-default rights described above. *See supra* at 7.  Zohar III defaulted on its payment obligations in April 2019.  (A-30 (¶ 96).)

Two days after Zohar I's note payment default, Patriarch commenced an involuntary bankruptcy proceeding against Zohar I in the United States Bankruptcy Court for the Southern District of New York.  (A-44 (¶¶ 146–47)); *see*

*also In re Zohar CDO 2003-1, Ltd.*, No. 15-23680 (Bankr. S.D.N.Y. Nov. 22, 2015), ECF No. 1.

During an evidentiary hearing held by the Honorable Robert D. Drain on Zohar I's and MBIA's motion to dismiss those proceedings, Judge Drain ordered the parties to meet and confer to negotiate a potential consensual resolution where Tilton would resign as collateral manager for all three of the Zohar Funds.  (A-44 (¶ 148); A-1171–75 (2/1/16 Hr'g Tr.) at 125:2-126:10, 127:21–24, 128:1–129:7).)  Under Judge Drain's contemplated resolution, Tilton would be required to provide the successor collateral manager and MBIA with adequate financial information about the Zohar Collateral and the Portfolio Companies.  *Id.*   Judge Drain acknowledged, however, that the parties had not yet committed to terms and that further mediation might be needed to reach a mutual resolution.  (A-1174–76 (2/1/16 Hr'g Tr.) at 128:6–130:3 ("[t]he parties . . . will meet promptly . . . to discuss implementing two things" and "[i]f the parties aren't able to agree on that promptly, I will very seriously entertain either party's request for mediation").)

The parties met once on February 3, 2016, exchanged proposed term sheets at that meeting, and provided Judge Drain with copies of their respective proposals on February 5, 2016.  (A-1177–82).  As Patriarch stated in its publicly-filed submission to Judge Drain, the parties were "unable to reach a consensual resolution," and Tilton voluntarily caused Patriarch to resign as collateral manager to avoid "continuing damage [to the businesses of the Portfolio Companies] arising from protracted unproductive negotiations and battle."  (A-1182–83.)  Following Patriarch's voluntary March 3, 2016 resignation and withdrawal of the involuntary bankruptcy petition against Zohar I, MBIA and the Zohar III Controlling Class

appointed AMZM as successor collateral manager for the Zohar Funds pursuant to their rights as Controlling Parties.  (A-50–51 (¶ 167).)

**D.     <u>The Zohar I Foreclosure Auction</u>**

Following Zohar I's default, and pursuant to its rights under the Indenture, MBIA directed the Zohar I Trustee to conduct a sale of the Zohar I Collateral.  (A-46 (¶¶ 154–55).)  The Trustee initially scheduled a public auction of the Zohar I Collateral for September 15, 2016, but Patriarch sued to enjoin it.  (A-47 (¶¶ 156–58)); *see also Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n*, No. 16-cv-07128 (the "<u>Auction Action</u>"), 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017). In the Auction Action, Patriarch obtained a temporary restraining order and sought a preliminary injunction based on the same arguments asserted here:  that the Zohar I auction (1) was commercially unreasonable and (2) improperly sought to sell Portfolio Company equity purportedly owned by Tilton.  (A-47 (¶ 156).)

After an evidentiary hearing on October 10, 2016, the Honorable Jed S. Rakoff denied Tilton's preliminary injunction motion, vacated the temporary restraining order, and ordered that the Zohar I auction be completed pursuant to procedures approved by the court.  (A-47-49 (¶¶ 159–61)); *see also Auction Action*, 2017 WL 3822603, at *1.  Specifically, the court rejected Patriarch's contention that the Zohar I auction was commercially unreasonable and confirmed that Zohar I had the right to auction any and all unidentified equity assets owned by Zohar I.  *See Auction Action*, 2017 WL 3822603, at *6.  The court's opinion did not address the merits of the parties' underlying equity ownership dispute or resolve which particular equity assets were in fact owned by Zohar I (and were therefore included

for sale in the auction) and which, if any, were in fact owned by Tilton.  *Id.*  The court's ruling confirmed, however, that Zohar I had the authority to sell any and all Collateral assets belonging to it.  *Id.*

On December 21, 2016, the Trustee held an auction sale of all of the Zohar I Collateral assets.  (A- 49 (¶ 161).)  In the auction, MBIA made the highest bid for all of Zohar I's Collateral.  (A-50 (¶¶ 165).)  Under the Indenture, Tilton held a "last look" right to match the highest bid, but she declined to exercise that right. (A-298–99 (Zohar I Indenture) § 5.4(a)(v)(A).)  Zohar I thus sold all of its Collateral to MBIA, and MBIA became the beneficial owner of the Zohar I Collateral.  (A-49– 50 (¶¶ 164–66).)

### E.    The Parties' Additional Related Zohar Litigations And The SDNY Opinion

After Patriarch resigned, the Zohar Funds were for the first time able to ascertain certain conduct that Patriarch had engaged with respect to the Collateral, and they were only now able to exercise their rights and remedies in connection therewith.  In October 2016, the Zohar Funds obtained a judgment that Patriarch breached its obligations to turn over books and records to AMZM as successor collateral manager.  (A-52 (¶¶ 170–71).)   In ruling in favor of the Funds, the Delaware Court of Chancery rejected Patriarch's defense that it should not be required to provide records regarding the Funds' equity positions in the Portfolio Companies and described Tilton's testimony on that issue as "codswallop." (A-1222 at n.128.)

The Zohar Funds also sued Patriarch pursuant to Delaware Corporation Law § 225 (the "Delaware 225 Action") to confirm the Zohar Funds' ownership of

equity in three Portfolio Companies.  (A-55–56 (¶¶ 177–81).)  In November 2017, following a six day trial, the Delaware Court of Chancery entered a judgment that Zohar II and Zohar III are the legal and beneficial owners of the disputed equity. (A-1331.)  Following Patriarch's appeal and a stay of proceedings, the Delaware Supreme Court ultimately entered a partial final order and judgment based on Vice Chancellor Slight's opinion.  (A-1333–37.)

In January 2017, the Zohar Funds asserted multiple causes of action against Patriarch under the federal RICO statute and New York common law.  (A-56–57 (¶ 182).)  The late Honorable William H. Pauley dismissed the Funds' claims solely on procedural grounds while expressly noting that the Funds had "specifically and thoroughly allege[d] a number of predicate acts to support [their] theory of liability under RICO" and that the RICO claim was ***not*** "immaterial, insubstantial, or frivolous."  (A-1537 at n.9.)  The Zohar Funds have since refiled a similar complaint (absent the RICO count) in the Bankruptcy Court, and that complaint has survived multiple Patriarch motions to dismiss intact.  *See Zohar CDO 2003-1, Ltd v. Patriarch Partners, LLC* (*In re Zohar III, Corp.*), 631 B.R. 133 (Bankr. D. Del. June 18, 2021).

In contrast with the non-merits-based dismissal of the Funds' RICO complaint, the Honorable P. Kevin Castel of the United States District Court for the Southern District of New York ("SDNY") dismissed with prejudice 12 different third-party claims Patriarch brought against the MBIA Defendants.  (A-118–60.) Significantly, the allegations at issue in Patriarch's Equitable Subordination Complaint at issue here are nearly identical to those that Judge Castel determined

could not as a matter of law sustain any of Patriarch's claims against MBIA in the SDNY.  For instance:

- The Complaint here alleges that MBIA and Patriarch for years engaged in failed restructuring negotiations and that, during such negotiations in late 2015 and early 2016, MBIA induced Tilton to resign as collateral manager under false pretenses.  (A-38–40, 43–45.)  Patriarch made the exact same allegations in the SDNY Action third-party complaint.  (A-1459–62, 1463–66 (¶¶ 107–13, 117–24).)  Judge Castel rejected Patriarch's multiple claims relating to those allegations on the grounds that MBIA's written proposals conclusively demonstrated that it did not make any actionable misrepresentations and that all its so-called "promises" were conditioned on Tilton's acceptance of terms she never accepted.  (A-132–39.)

- Additionally, the Complaint alleges that MBIA and US Bank conducted a commercially unreasonable and sham Zohar I auction.  (A-46–50.)  These allegations are nearly identical to those in the SDNY Action.  (A-1473–79 (¶¶ 143–57).)  Judge Castel dismissed the claims, holding that Judge Rakoff's rulings foreclosed Patriarch's attempts to challenge the reasonableness of the Zohar I auction as a matter of law.  (A-143–46.)

- Further, the Complaint asserts that MBIA's appointment of AMZM as collateral manager and AMZM's enforcement of the Funds' rights against Patriarch were improper and conducted in bad faith.  (A-50–62.)  Patriarch pled and litigated the very same issue in the SDNY Action.  (A-1466–73,

1480–82 (¶¶ 125–142, 162–67).)  Judge Castel held that MBIA was entitled as Controlling Party to appoint AMZM, that AMZM's litigations against Patriarch were in no event frivolous or "sham" litigations, and that such allegations do not state a plausible claim for relief.  (A-139–43, 148–55, 157-58.)

Most telling, and directly relevant to this Court's assessment of the sheer implausibility of the Complaint and of Patriarch's current characterizations of its pleading and the Order on appeal, Judge Castel confirmed that Patriarch cannot be trusted to fairly and accurately describe the facts and events that it contends give rise to claims against MBIA:

> The Patriarch Parties have made significant use of creative license in characterizing the statements but when the actual statements are scrutinized, they fail to state a plausible claim for relief. . . .  When viewed under the bright light of context, however, the Patriarch Parties' purported misstatements and omissions reveal themselves as nothing more than a smoke-and-mirrors attempt to evade the particularity requirement of Rule 9(b).

(A-133–34.)

In sum, Judge Castel examined the same allegations and arguments advanced here and dismissed Patriarch's claims with prejudice as a matter of law.

## F.     The   Delaware   Bankruptcy   Cases   And   This   Equitable Subordination Action

Tilton caused the Zohar Funds to file the Zohar Bankruptcy Cases on March 11, 2018 (the "Petition Date").  (A-62 (¶ 197).)  On May 21, 2018, the Bankruptcy Court approved a settlement agreement (the "Settlement Agreement") which, among other things, stayed all Zohar-related litigation for at least 15 months

(the "Litigation Stay Period") to facilitate the monetization of the Portfolio Companies' debt and equity assets comprising the Zohar Funds' Collateral ("Monetization Process").  (A-63 (¶ 199).)  Notwithstanding Tilton's obligations under the Settlement Agreement, only two Portfolio Companies had been sold by the end of the Litigation Stay Period with no amounts having then been paid to reimburse MBIA pursuant to the Monetization Process.  (A-64 (¶ 201).)  Patriarch commenced this action on October 1, 2019, one day following the expiration of the Litigation Stay Period.  (A-78 (citing Adv. D.I. 2).)

The MBIA Defendants moved to dismiss the Complaint on October 30, 2020.  Adv. D.I. 67.  Following multiple amendments and corrections to the operative pleading for reasons not pertinent to this appeal (A-78 at n.11), briefing on the MBIA Defendants' renewed motion to dismiss closed on February 24, 2022 with argument heard on March 3, 2022.  (A-79.)

On March 25, 2022, the Bankruptcy Court issued the Order and dismissed the Complaint with prejudice as against all Defendants.  (A-117.)  The Bankruptcy Court held that, among other things, the Complaint did not state a plausible claim for equitable subordination against MBIA because Patriarch did not plead facts supporting a reasonable inference that any of MBIA's alleged conduct was inequitable.  (A-106–15.)  Patriarch appeals four particular aspects of this core holding — specifically, the Bankruptcy Court's well-reasoned conclusions that, as alleged, (1) MBIA's negotiations with Patriarch regarding a potential restructuring of the Zohar CLOs were not inequitable (A-107–10; *see also* Opening Brief at 29–35); (2) MBIA's cooperation with the SEC's investigation of Patriarch was not inequitable (A-110–11; *see also* Opening Brief at 35–38); (3) Judge Castel's SDNY

Decision precludes Patriarch's claims that MBIA inequitably induced Patriarch's resignation (A-111–12; *see also* Opening Brief at 46–47); and (4) MBIA's conduct in connection with the Zohar I auction was not inequitable (A-93–96, 106-07 & n.220; *see also* Opening Brief at 47–50). Patriarch, however, does not challenge the Order's determination that the Complaint suffered from additional deficiencies in pleading an unfair advantage or particularized injury as required to state a claim for equitable subordination. (A-115–16 at n.284.) Nor does Patriarch appeal the denial of its request for leave to further amend the Complaint, which the Bankruptcy Court reasoned was not warranted given that "[s]ignificant time, effort, and resources of not only the Defendants but of numerous courts have been expended on Plaintiffs' allegations that have been rehashed over and over," and that further amendment would be "futile and potentially abusive to the Defendants and this Court." (A-117.)

## ARGUMENT

The Bankruptcy Court is absolutely correct that the plausibility of Patriarch's claim against MBIA "is undermined by governing documents and past litigation results." (A-106.) There is no dispute that the Bankruptcy Court correctly identified and recited the applicable legal standard for assessing the sufficiency of Patriarch's claims on a Rule 12(b)(6) motion to dismiss. (A-86–87 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and progeny)); *see also* Opening Brief at 7-8 (reciting the same "plausibility" standard set forth in the Order and applied by the Bankruptcy Court).

In accordance with that standard, the Bankruptcy Court detailed the Complaint's allegations regarding MBIA's conduct, assumed them to be true, and

construed such facts in the light most favorable to Patriarch.  (A-82–85, 91–97, 106–12.)  Unable to identify factual allegations that the Bankruptcy Court disregarded, Patriarch instead faults the Bankruptcy Court for concluding that the inferences Plaintiffs asked it to draw regarding MBIA's conduct were unreasonable in light of the Complaint's conflicting allegations, the extensive public record, and the undisputed transaction and other documents incorporated by reference in the Complaint.  Patriarch's appeal fails because the plausibility analysis undertaken by the Bankruptcy Court is precisely what *Twombly* and *Iqbal* require.  *See Host Int'l, Inc. v. MarketPlace, PHL*, LLC, 32 F.4th 242, 248 (3d Cir. 2022); *see also Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 479 (D. Del. 2010) (pleading's factual deficiencies rendered claim implausible).

## I.   THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON MBIA'S AND PATRIARCH'S RESTRUCTURING NEGOTIATIONS

The Bankruptcy Court correctly determined that the Complaint's allegations regarding MBIA's and Patriarch's negotiations regarding a potential note maturity extension and restructuring of the Zohar CLOs did not — and, without additional facts, could not — reasonably support an inference that MBIA acted inequitably.  (A-109–10.)  The Bankruptcy Court assumed the veracity of allegations that from 2013 to 2015 MBIA and Patriarch discussed the potential for an extension of the Zohar I note maturity date and a global restructuring of the Zohar CLOs.  (A-107–09.)  And, it is undisputed that the parties never reached an agreement on either transaction and that the Zohar Funds defaulted on their note payment obligations as a result.  (A-109; *see also* A-33, 35–36, 38 (¶¶ 106–07, 113, 120–21, 127).)

As the Order also correctly determined, the Complaint did not contain factual allegations supporting the inferential leap required for the Bankruptcy Court to conclude that the parties' inability to agree on an extension or restructuring was due to a fraudulent scheme by MBIA to steal Portfolio Company equity.  (A-109–10.)  In addition to these factual deficiencies, the Complaint's own allegations and simple logic and common sense further prevented the Court from reasonably concluding that MBIA did anything aside from negotiating transaction terms to which the parties ultimately did not consent.  *Id.*  Accordingly, the Complaint failed to nudge its claim of inequitable conduct based on these unsuccessful workout negotiations across the line from possible to plausible.  *Id.*

Patriarch takes issue with three aspects of the Order's dismissal of its restructuring negotiations claim.  First, Patriarch denies that its requested inference regarding the parties' unsuccessful restructuring negotiations was unsupported and unreasonable.  *See* Opening Brief at 30-32.  Patriarch complains "there is nothing inherently implausible about MBIA's strategy as described in the Amended Complaint," while at the same time failing to identify factual allegations supporting its conclusory assertion that MBIA misled Patriarch about its willingness to enter into a mutually acceptable restructuring transaction.  The Opening Brief points to a single paragraph of the Complaint describing the Zohar Funds' "unique "investment strategy" and that strategy's dependence on Tilton's active roles at the CLOs and Portfolio Companies.  *See id.* at 32 (citing A-20 (¶ 66)).  This sole paragraph cited by Patriarch does not refer to MBIA at all, let alone allege facts that would allow a court to infer that MBIA spent years lying to Tilton about a potential workout in order to secure Patriarch's continued management of the CLOs and Portfolio

Companies that it secretly intended to steal. Indeed, the Complaint alleges the opposite — that as part of the parties' restructuring negotiations MBIA supposedly induced Tilton to prematurely resign as collateral manager. (A-43 (¶ 143).) Patriarch's criticism of the Order for declining to make unreasonable and irrational inferences regarding the parties' negotiations is therefore hollow and, like the claim of inequitable conduct itself, unsubstantiated.

Second, Patriarch disputes that "the Amended Complaint's own allegations surmise a conflicting theory for MBIA's [allegedly inequitable] behavior . . . ." *See* Opening Brief at 32–34 (citing A-109). More specifically, it contends that allegations regarding MBIA's "true strategy" to delay any restructuring of the Zohar CLOs until after Zohar I defaulted so it could leverage its post-default rights and negotiate more favorable transaction terms are consistent with and supportive of its overarching theory that MBIA for years lied about its willingness to enter a consensual restructuring. *See* Opening Brief at 33; *see also* (A-37–38 (¶¶ 125–26, 128).) Patriarch's reasoning that these competing theories are part of a coherent and plausible strategy that evolved over time does not withstand scrutiny. *See* Opening Brief at 33-34. It oversimplifies the Complaint's allegations and ignores the different underlying motives ascribed to MBIA for failing to reach an agreement with Patriarch. Further, as the Bankruptcy Court noted, the highly-negotiated Zohar Transaction Documents made clear that MBA received important rights with respect to the Collateral post-default. (A-95–96 & n.157; *see also* A-18 (¶ 60); A-46 (¶ 154), A-65 (¶ 207); A-298–300, 303, 305, 410-11 (Indentures §§ 5.4, 5.13, 5.17, 16.5); A-1005–06, 1023 (CMAs §§ 1.1, 5.5).) As such, there was never any secret that a Zohar I default had potential strategic value to MBIA in its negotiations with

Patriarch.  And Patriarch's allegations that MBIA sought to leverage such rights are neither consistent with nor supportive of the Complaint's theory that for years MBIA misled Patriarch regarding its willingness extend or restructure the CLOs and steal Portfolio Company equity.

Third, Patriarch contends that the Order improperly "gives MBIA the benefit of the doubt, not Plaintiffs," when it determined that Patriarch's allegations regarding MBIA's conduct and motives "defy logic."  *See* Opening Brief at 34–35 (citing A-109–10).  To the contrary, the Bankruptcy Court identified the facts alleged, assumed them to be true, and in accordance with well-established precedent under *Iqbal* and *Twombly* drew on its "judicial experience and common sense" to assess whether the Complaint stated a plausible claim for relief.  *Host Int'l, Inc.*, 32 F.4th at 248 (quoting *Iqbal*, 556 U.S. at 679).  As explained in the Order, the Complaint failed to meet this standard because, among other things, it did not allege any facts allowing the Bankruptcy Court to reasonably infer that MBIA would intentionally cause the Zohar Funds' defaults and incur major economic losses, all while undisputedly facing a severe liquidity crisis and significant challenges and uncertainty in obtaining any monetary recovery in litigation with Patriarch.  (A-109–10 ("No facts have been provided to answer these obvious questions and to support such a seemingly irrational business decision as advanced by the Plaintiffs.").)  Nor does the Opening Brief point to any supporting facts.  It argues that MBIA possibly could have adopted a "high-risk, high reward strategy" to acquire the Portfolio Company equity, but it again cites no facts to shore up the logical defects in the claim identified by the Bankruptcy Court.  *See* Opening Brief at 34 (citing A-43–46

(¶¶ 142–45).)  Without more, Patriarch has not nudged its claim across the line from possible to plausible as required by law.[4]

## II.   THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON MBIA'S COMMUNICATIONS WITH THE SEC

Patriarch advances two principal arguments challenging the Bankruptcy Court's dismissal of its claim based on MBIA's communications with the SEC:  (1)  Patriarch asserts that the Order placed "an unwarranted burden" on it to plead certain information regarding MBIA's alleged interactions with the SEC (*see* Opening Brief at 36–37) and (2) Patriarch asserts that the Order incorrectly offered "'speculative alternative explanations" regarding the SEC's alleged sharing of confidential materials with MBIA (*see id.* at 37–39).  Each of these arguments is without merit.

First, the Bankruptcy Court correctly held that "there are insufficient factual allegations to allow this Court to make a reasonable inference that MBIA acted inequitable in any interaction [it] may have had with the SEC." (A-110.)  The argument that this holding unjustifiably burdens Patriarch to plead details of

---

[4]   Patriarch cites the unpublished decision in *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84 (3d Cir. 2019) for the unremarkable proposition that courts should not resolve two "competing *plausible* explanations" against a plaintiff at the motion to dismiss stage.  *See* Opening Brief at 35 (citing *Bagic*, 773 F. App'x at 88-89 (reversing dismissal because district court resolved ambiguity in testimony submitted in support of motion papers against the plaintiff).  That case has no bearing here, where, as explained above, the Complaint was devoid of factual allegations from which the Bankruptcy Court could reasonably infer that MBIA would engage in conduct that made no logical or commercial sense.  Similarly, Patriarch's cited decision of *16630 v. Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) supports affirmance of the Order.  In that decision, the Sixth Circuit affirmed dismissal on the grounds that the complaint failed to allege facts allowing the court to reasonably infer that the defendant bank denied the plaintiff a loan extension based on his national origin as opposed to his credit risk.  *See id.* at 505.

confidential interactions not in its possession is wrong on both the law and the facts. As the Order quotes directly from *Iqbal*: "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  (A-110 at n.254.)  The cases cited by Patriarch in the Opening Brief do not hold otherwise.[5] Rather, they apply solely in cases (unlike this one) where plaintiffs are excused from having to satisfy Rule 9(b)'s stringent pleading requirements because the "who, what, when, where and how" factual information required under that heightened pleading standard "is peculiarly within the defendant's knowledge or control." *Charal Inv.  Co. v. Rockefeller* (*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*), 311 F.3d 198, 216 (3d Cir. 2002).

Here, the Bankruptcy Court held that Patriarch's allegations regarding MBIA's interactions with the SEC failed to meet even Rule 8(a)'s notice pleading standard.  (A-110.)  The Complaint provided zero details regarding the interactions at issue or the particular misinformation that MBIA supposedly provided to the SEC, and failed even to allege that MBIA provided the SEC with false information.  (A-110.)  Nor did the Complaint allege that any information provided by MBIA had any causal relationship with the SEC's independent decisions to investigate Patriarch or bring an enforcement action.  *Id.*  As such, the Rule 9(b) cases Patriarch relies on have no application here and should be disregarded.  However, even if the legal principle set forth in those cases and invoked by Patriarch did apply, it would not rescue Patriarch's deficient pleadings.  *See In re Rockefeller Ctr. Properties, Inc.*

---

[5]  *See* Opening Brief at 36 (citing *Tender Touch Rehab. Servs., LLC v. Brighten at Bryn Mawr*, No. CIV. A. 11-7016, 2012 WL 993532, at *5 (E.D. Pa. Mar. 23, 2012); *Krasner v. Rahfco Funds LP*, No. 11 CV 4092 VB, 2012 WL 4069300, at *8 (S.D.N.Y. Aug. 9, 2012); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987)).

*Sec. Litig.*, 311 F.3d at 216 ("even when the defendant retains control over the flow of information, 'boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible'") (emphasis and citation omitted).

Patriarch's argument that it should be excused from pleading basic facts regarding MBIA's interactions with the SEC fails for the additional reason that it is simply not true that the facts and information relating to these MBIA-SEC interactions are "confidential and uniquely in the possession of MBIA." Opening Brief at 36. The Complaint itself demonstrates as much. (A-41 (¶¶ 137–38).) Paragraphs 137 and 138 of the Complaint quote from multiple documents "obtained by Ms. Tilton during the SEC proceeding," including emails between MBIA's counsel and SEC officials and "internal handwritten notes of [the SEC's] meetings with MBIA." *Id.* And, contrary to Patriarch's current representation to the Court that it is "[l]acking access to MBIA's communication with the SEC," counsel for Patriarch stated in a sworn declaration submitted in the Auction Action that Patriarch received document discovery from the SEC Division of Enforcement that included internal SEC interview notes and email messages between MBIA, its counsel and the SEC. *See* Declaration of Robert Serio in further support of Plaintiffs' Application by Order to Show Cause for a Preliminary Injunction, filed in *Patriarch v. U.S. Bank Nat'l Ass'n*, 16-cv-07128-JSR (S.D.N.Y. Oct. 5, 2016), ECF No. 53 ¶¶ 5, 17, 19-24, 30-33.[6] In sum, Patriarch offers no legitimate ground for its failure to

---

[6] The Court may take judicial notice and consider as part of its appellate review publicly-filed documents whose authenticity is not disputed. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (judicial notice taken of publicly-filed SEC disclosure statements not submitted or reviewed by the trial court but whose authenticity was not disputed).

exceed the minimum pleading threshold, and the Bankruptcy Court's ruling must therefore be affirmed.

Second, the Order correctly held that Patriarch's allegations regarding MBIA's purported information-sharing agreement with the SEC fail to state a claim because the Complaint did not allege that the arrangement was in fact kept secret from Patriarch or how MBIA's receipt of such information was inequitable or how Patriarch was harmed by it. (A-111.)   The Opening Brief contends that a mere attempt by MBIA and the SEC to keep the arrangement secret by itself constitutes inequitable conduct.   *See* Opening Brief at 38.   Significantly, however, Patriarch cites no legal authority for this proposition.   Further, the Complaint's admission that the SEC was permitted to inform Tilton of the arrangement following notice to MBIA contradicts Patriarch's argument that MBIA attempted but was prevented from hiding the arrangement.   (A-41 (¶ 38).)   Likewise, the Bankruptcy Court soundly relied on the Complaint's own allegations in determining that the Portfolio Company information received by MBIA was similar to information it had already received.   (A-111 (citing A-35–36 (¶¶ 113, 122)).)   In any event, the Opening Brief does not demonstrate how the Bankruptcy Court erred because it does not point to any factual allegations that it was harmed by MBIA's receipt of Portfolio Company information.   Thus, there is no basis to find that the Bankruptcy Court should have drawn an inference in Patriarch's favor but failed to do so.

## III.   JUDGE CASTEL'S OPINION BARS RELITIGATION OF CLAIMS BASED ON PATRIARCH'S RESIGNATION AND AMZM'S MERITORIOUS LITIGATION

The Bankruptcy Court correctly held that (a) Judge Castel decided in the SDNY Opinion that MBIA did not make any misstatements or omissions regarding Tilton's retention of equity or control of the Portfolio Companies and, thus, did not induce Patriarch's resignation as the Zohar CLOs' collateral manager; (b) Judge Castel decided in the SDNY Opinion that AMZM, the Zohar III Controlling Class, and MBIA were not liable for litigations and related enforcement actions taken by AMZM against Patriarch on behalf of the Zohar Funds; and (c) the SDNY Opinion precluded Patriarch from relitigating those issues in this Equitable Subordination Action.  (A-97–101, 106–07, 111–12.)

Patriarch contends that the Bankruptcy Court erred in applying the doctrine of collateral estoppel for two reasons: (1) there was not complete identify between the issues decided in the SDNY Opinion and the Order and (2) certain of the SDNY Opinion's findings regarding AMZM's litigation campaign were not essential to that decision and, thus, should not preclude Patriarch from relitigating whether AMZM's litigation campaign was motivated by an improper purpose.  *See* Opening Brief at 42-46.  Specifically with respect to its allegations that MBIA induced Patriarch's resignation, Patriarch contends that issue preclusion does not apply because the SDNY Opinion decided that those allegations did not state plausible claims for relief for fraud, negligent misrepresentation, and promissory estoppel and that such a decision by the SDNY Opinion "does not foreclose the possibility that they were nevertheless misleading."  *See* Opening Brief at 47.

Patriarch willfully misconstrues Judge Castel's rulings and misapplies the law of issue preclusion, and its arguments should be rejected.[7]

The issues Judge Castel decided in dismissing Patriarch's fraud, negligent misrepresentation, and promissory estoppel claims based on allegations regarding Patriarch's resignation are the same issues that were presented to the Bankruptcy Court in this case.  Contrary to Patriarch's characterization of the SDNY Opinion, Judge Castel did not merely determine that Patriarch's allegations "were not sufficiently definite to meet the pleading standards."   Opening Brief at 47. Rather, Judge Castel examined in detail the parties' written proposals and correspondence that Patriarch incorporated into the SDNY Action complaint and found that MBIA's October 2015 and February 2016 t proposals to Patriarch conclusively demonstrated that MBIA did not make any misrepresentations or omissions inducing Patriarch to resign.  (A-131–39.)  Judge Castel further held that MBIA's so-called "promises" were not false but rather were non-binding proposals conditioned on Tilton's acceptance of terms she never accepted.  *Id.*

Notwithstanding the SDNY Opinion's definitive ruling that. statements MBIA made in October 2015 and February 2016 prior to Tilton's resignation were not actionable misrepresentations, Patriarch maintains that they could be deemed "misleading" and sustain a claim for inequitable conduct.  *See* Opening Brief at 47. Unsurprisingly, Patriarch cites no authority for its position.  Patriarch elsewhere cites *Youngman v. Yucaipa Am. Alliance Fund I, L.P.* (*In re Ashinc Corp.*), 629 B.R. 154,

---

[7]   To avoid burdening the Court with duplicative points and authorities, the MBIA Defendants hereby join in and adopt the portions of AMZM's and the Zohar III Controlling Class's briefs arguing that the Bankruptcy Court Order correctly applied the doctrine of Collateral Estoppel. *See* Fed. R. Bankr. Proc. 8014(e).

217 (Bankr. D. Del. 2021) for the proposition that the threshold for pleading inequitable conduct is "considerably" lower than the pleading requirements for other tort or contract claims. *See* Opening Brief at 44. The court's decision in *In re Ashinc*, however, is not so drastic. *See* 629 B.R. at 217-18 (reciting the well-established examples of inequitable conduct). Indeed, the plaintiff in *In re Ashinc* was similarly alleged to have engaged in fraud, breaches of contract, and tortious conduct that Judge Castel expressly held did not occur here. *See id.* at 165-73, 215; *see also SDNY Opinion*, 2021 WL 4460547, at *8-19 (or A-132–56). And, even assuming that otherwise legal, non-actionable conduct could in the abstract still qualify as sufficiently "unfair" or "inequitable" for purposes of sustaining a claim for subordination, this is not that case. Indeed, Judge Castel ruled that Patriarch's nearly identical allegations failed to demonstrate that MBIA's statements to Patriarch, appointment of AMZM, or directions regarding the Zohar I auction were improper in any way. *See id.*[8]

Further, Patriarch's arguments that collateral estoppel does not preclude relitigation of its allegations relating to AMZM's litigation campaign and AMZM's, the Zohar III Controlling Class's and MBIA's so-called "improper purpose" fail for the reasons set forth in the Answering Briefs of Appellees AMZM and the Zohar III Controlling Class. Because Patriarch contends that the "same arguments" advanced with respect to the AMZM litigation campaign "apply with

---

[8] In remarking on the substantive identity between the Complaint here and Patriarch's complaint in the SDNY Action, Judge Pauley remarked that "paragraphs in the Subordination Complaint are grafted verbatim from the Patriarch Complaint" in the SDNY Action, and that the 'steal the equity' themes that pervade the Patriarch Complaint are infused in the Subordination Complaint." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 464 (S.D.N.Y. 2020).

equal force" to the preclusion of Patriarch's allegations that MBIA induced Patriarch to resign as collateral manager (Opening Brief at 46), the Court should reject them on the additional grounds set forth in AMZM's and the Zohar III Controlling Class's memoranda of law, which are incorporated herein as set forth above.

## IV. THE COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF BASED ON THE ZOHAR I COURT-APPROVED FORECLOSURE AUCTION

This is the fourth different federal court to assess the sufficiency of Patriarch's allegations challenging the reasonableness of the Zohar I foreclosure auction. The other three have unanimously rejected Patriarch's claims. (A-93–96; A-143–46); *see also Patriarch Partners,* 2017 WL 3822603 (S.D.N.Y. Aug. 28, 2017).

Patriarch's Opening Brief does not advance any new arguments regarding the auction. And its two grounds for appeal on this issue — (i) the "question of whether Judge Rakoff's oversight of the auction ensured a fair and adequate disposition of the collateral is a factual question that should not have been resolved on a motion to dismiss" and (ii) "the reasoning and motivation behind Ms. Tilton's decision not to exercise her first-look rights th[r]ough Octaluna I are issues of fact that cannot be resolved against Plaintiffs on a motion to dismiss" — were similarly adjudicated in favor of U.S. Bank and MBIA in the SDNY Opinion. (A-143–46.)

Patriarch vaguely asserts that, notwithstanding Judge Rakoff's oversight of the auction, the Bankruptcy Court's "account" of certain unidentified "events shows that MBIA acted inequitably by attempting to stage a commercially

unreasonable auction." Opening Brief at 48–49. Patriarch, however, cites nothing in the Order or anything else in the factual record to support its assertion. To the contrary, multiple courts have held that the auction was *not* commercially unreasonable, and the Complaint contains no factual allegations that the initial auction terms were unreasonable or that any of Patriarch's legal fees incurred in attempting to enjoin the auction as contemplated under those initial terms were reasonable, necessary or justified. Such vague, unsupported assertions are insufficient to overturn the Bankruptcy Court's reasoned decision.

In that regard, the Bankruptcy Court held that Patriarch failed to allege sufficient facts from which the Court could infer US Bank acted inequitably and, in turn, determined that Patriarch's claim against MBIA in connection with the Zohar I auction failed for the reasons explained in connection with US Bank. (A-93–96, 106–07.) Aside from Patriarch's vague and baseless assertion regarding MBIA's conduct described above, the Opening Brief does not advance any grounds for appeal specifically relating to MBIA's conduct in connection with the auction. Accordingly, to avoid burdening the Court with duplicative points and authorities, the MBIA Defendants hereby join in and adopt the Answering Brief of US Bank opposing Patriarch's appeal based on the Zohar I foreclosure auction. *See* Fed. R. Bankr. P. 8014(e). In addition to the reasons set forth herein, Patriarch's arguments regarding the Bankruptcy Court's rulings with respect to the auction fail for the reasons set forth in the US Bank's Answering Brief.

## <u>CONCLUSION</u>

For the foregoing reasons, the MBIA Defendants respectfully request

that the Court affirm the Order and grant Appellees such other and further relief as the Court deems just and proper.

Dated:  June 15, 2022
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*Timothy P. Cairns*
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:        ljones@pszjlaw.com
                  tcairns@pszjlaw.com

and

CADWALADER, WICKERSHAM & TAFT LLP
Gregory Petrick
Ingrid Bagby
Michele Maman
Sean F. O'Shea
Michael E. Petrella
Joshua P. Arnold
200 Liberty Street
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
Email: gregory.petrick@cwt.com
          ingrid.bagby@cwt.com
          michele.maman@cwt.com
          sean.o'shea@cwt.com
          michael.petrella@cwt.com
          joshua.arnold@cwt.com

*Counsel to MBIA Inc. and*
*MBIA Insurance Corporation*

- 32 -

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 8015(h) of the Federal Rules of Bankruptcy Procedure, the undersigned hereby certifies that this brief complies with the type-volume limitation of Rule 8015(a)(7)(B).

Exclusive of the exempted portions of the brief specified in Rule 8015(g), this brief contains 8,224 words.

This brief has been prepared using Microsoft Word.  The undersigned has relied upon the word count feature of this word processing software in preparing this certificate.

Dated:  June 15, 2022                                   *Timothy P. Cairns*